# Exhibit A



**CORPORATION SERVICE COMPANY®**

null / ALL
**Transmittal Number: 15251979**
Date Processed: 06/10/2016

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Service Process Team 3-11-309<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| **Copy of transmittal only provided to:** | Kevin Jones<br>Rebecca Lewis<br>Cassandra Struble |

| | |
|---|---|
| **Entity:** | Nationwide Mutual Fire Insurance Company<br>Entity ID Number  3277044 |
| **Entity Served:** | Nationwide Mutual Fire Insurance Co |
| **Title of Action:** | Hanna Shalakhti vs. Nationwide Mutual Fire Insurance Co. |
| **Document(s) Type:** | Notice and Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Bexar County Court, Texas |
| **Case/Reference No:** | 2016CV03123 |
| **Jurisdiction Served:** | Texas |
| **Date Served on CSC:** | 06/10/2016 |
| **Answer or Appearance Due:** | 10:00 am Monday next following the expiration of 20 days after service |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Charles Tabet<br>210-572-7272 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882  |  sop@cscinfo.com

"The State of Texas"                    NO. _2016CV03123_____

HANNA SHALAKHTI_____                IN THE COUNTY COURT AT
Plaintiff
vs.                                             LAW NO. _3_____

NATIONWIDE MUTUAL FIRE INSURANCE CO ET AL       BEXAR COUNTY, TEXAS
Defendant
                              NOTICE
**Citation** Directed to: NATIONWIDE MUTUAL FIRE INSURANCE CO
BY SERVING ITS Registered Agent, CORPORATION SERVICE COMPANY
            211 EAST 7TH ST SUITE 620
            AUSTIN, TX 78701-3218

"You have been sued. You may employ an attorney. If you or your attorney do not
file a written answer with the clerk who issued this citation by 10:00 a.m. on the
Monday next following the expiration of twenty days after you were served this
citation and petition, a default judgment may be taken against you."   Said   petition
was filed on the _27TH_ day of_____May_____, _2016_ .
ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS _7TH_ DAY OF _June_____
A.D.,_2016_ .
PLAINTIFF'S ORIGINAL PETITION

                                          GERARD RICKHOFF
                                          County Clerk of Bexar County, Texas
                                          Bexar County Courthouse
                                          100 Dolorosa Suite 104
 CHARLES K TABET                          San Antonio, Texas 78205
Attorney/PLAINTIFF
address 2600 MCCULLOUGH AVE
        SAN ANTONIO, TX 78212-3034        By: _Diamond L. Vargas_Deputy
                                              DIAMOND VARGAS

_____
                        OFFICER'S RETURN
Came to hand _9th_ day of _JUNE_,A.D. _16_, at _1255_ o'clock _P_.M.
and executed the _10_ day of _JUNE_ ,A.D. _16_ in _AUSTIN, TEXAS_
at _915_ o'clock _A_.M. by delivering to _Nationwide mutual Fine Ins Co_
in person a true copy of this citation together with the accompanying copy of plaintiff's
petition. Served at _211 East 7th St, Ste 620, Austin, Texas 78701-3218_

I traveled         miles in the execution of this citation. fees:    Serving citation
$          Mileage        Total $ _Carl Ross_
                                _TRAVIS_____ County, Texas
                          By _Carl Ross_
The State of Texas

                    NON - PEACE OFFICER VERIFICATION
VERIFICATION OF RETURN (IF NOT SERVED BY PEACE OFFICER)

SWORN TO this_____day of_____, _____.

2016CV03123
(DKC001)            _____
                    NOTARY PUBLIC, STATE OF TEXAS          ORIGINAL

E-FILED
Bexar County, County Clerk
Gerard Rickhoff
Accepted Date: 5/27/2016 1:20:28 PM
Accepted By: Amanda Lyssy
/s/ Amanda Lyssy
Deputy Clerk

CAUSE NUMBER __2016CV03123__

| | | |
|---|---|---|
| HANNA SHALAKHTI | § | IN THE COUNTY COURT |
| VS. | § | AT LAW N0. __CC# 03__ |
| NATIONWIDE MUTUAL FIRE INSURANCE CO. AND ALARM SECURITY GROUP, LLC. D/B/A ASG SECURITY | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE COURT:

Hanna Shalakhti, hereinafter known as Plaintiff, files this Original Petition complaining of Nationwide Mutual Fire Insurance Co. (Nationwide) and Alarm Security Group, LLC. d/b/a ASG Security (ASG), hereinafter known as Defendants, and for cause of action would show the following:

Parties

1.1    Plaintiff is, and has always been for purposes of this cause of action a resident of Bexar County, Texas.

1.2    Defendant, Nationwide Mutual Fire Insurance Co., is an insurance company organized under the laws of the state of Ohio and is doing business in this state. Service of process may be had by serving its agent for process, Corporation Service Company, at 211 East 7th St., Suite 620, Austin, Texas 78701-3218.

1.3    Defendant, Alarm Security Group, LLC. d/b/a ASG Security, is a limited liability company doing business in this state. Service of process may be had by serving its agent for service, National Corporate Research, Ltd., at 206 East 9th St., Suite 1300, Austin, Texas 78701.

Jurisdiction and Venue

2.1    This court has jurisdiction over the subject matter made the basis of this lawsuit because it is within the jurisdictional limits of this court and jurisdiction over the Defendant the subject of this suit because they are conducting business in this state.

2.2    Venue is proper in this county because the Defendants are doing business in this county and this cause of action arose in this county.

Selection of Discovery Level and Relief Sought

3.1    Plaintiff is seeking monetary damages in the amount of one hundred thousand and no/100 ($100,000.00) dollars or less. Discovery should be conducted under a tailored discovery control plan under Rule 190.4 of the Texas Rules of Civil Procedure.

1

Background

4.1     Plaintiff is the owner of a grocery store located at 1015 North Sabinas St., San Antonio, Bexar County, Texas. Prior to the occurrence made the basis of this suit, Plaintiff purchased insurance coverage for his business from Defendant, Nationwide, and that Defendant issued insurance coverage naming Plaintiff as a party insured insuring the content of his business against loss caused by theft. A true and correct copy of that insurance policy is attached as Exhibit "E" and incorporated herein for all purposes.

4.2     Plaintiff also purchased from Defendant, ASG, and had in effect at all times pertinent hereto an alarm service to monitor and guard his business and its content in the event of a break-in or burglary. This Defendant was responsible for maintaining, guarding and monitoring any possible break-in at the business location.

The Loss

5.1     Prior to July 10, 2014, Plaintiff had been having problems with the alarm system at his business, where it was producing false alarms. Plaintiff would consistently call ASG to perform the repairs and those repairs would be made only to arise again. For approximately two weeks before this incident, Plaintiff was experiencing problems from a faulty zone that controlled the front door, so Plaintiff called to set an appointment for ASG to and repair it. He was told they would be at the store within the next three to four days. Meanwhile, ASG flagged the system as a "test mode" to avoid additional false alarms. (the city of San Antonio charges businesses a fine of approximately one hundred and no/100 [$100.00] dollars for each trip a police officer makes to a scene where no burglary took place or is in progress [reports branded as false alarms]). Hence, on July 10, 2014, and for approximately three days before that date ASG had the alarm system flagged as "test mode." On or about July 10, 2014, after Plaintiff finished his usual business he set the alarm in the usual manner and locked the store.

5.2     After the business was closed that evening Plaintiff's business was burglarized, through a break-in of the front door and Defendant suffered a loss of merchandise and money. Although there was movement inside the store and the alarm through the motion detector would have shown the activity inside ASG neither notified the police nor the Plaintiff because it had the system flagged as "on test mode."

Claim on the Policy Against Nationwide

6.1     Upon discovery of the loss, Plaintiff contacted Defendant, Nationwide, and notified it of the loss, completed and submitted a list of the loss he sustained and cooperated with all requests made by that Defendant, but Nationwide refused liability because it claimed that the setting of the alarm on test mode voided the responsibility it had to cover this loss.

6.2     Despite the fact that all conditions precedent had been met for Nationwide to pay Plaintiff's losses under the policy, that Defendant failed and refused to pay the value of Plaintiff's claim causing Plaintiff to suffer that loss together with other harm as described further in this petition.

Claim Against ASG

7.1    ASG conduct as set out herein resulted in a breach of its contract and obligations to Plaintiff in that it agreed to maintain, repair, monitor and notify the Plaintiff and the police of any burglary, break-in or breach of the property but failed to comply with those obligations. ASG informed the Plaintiff to place the alarm on test mode, then simply ignored all activity that was taking place in the store despite the fact that the activity was taking place in areas other than the problem zone.

Proximate Cause

8.1    Defendants' conduct as set out above was the direct and producing cause of Plaintiff's damages being sought in this case. All conditions precedent to Plaintiff's recovery have occurred or have been met.

Damages

9.1    Nationwide's conduct in this matter was the producing and proximate cause of harm to Plaintiff in at least the following respects:

    a.    Plaintiff lost the benefits and protections afforded by the policy of insurance purchase from that Defendant as set out herein.

    b.    Plaintiff's ability to use the insured property to produce income has been crippled by the Defendant's conduct, with a resulting loss of profits to the plaintiff in a sum in excess of the minimum jurisdictional limits of this court.

9.2    As a direct and proximate result of Defendants' breaches Plaintiff sustained damages in a sum in excess of the minimum jurisdictional limits of this court.

Insurance Code Violations, Breach of Contract and Attorney's Fees

10.1    It has become necessary for Plaintiff to retain the services of Charles Tabet, an attorney at law licensed in the state of Texas and a member of its bar to protect his rights in prosecuting this case. Plaintiff seeks recovery of his reasonable attorney's fees through the trial court and in the event of an appeal to the court of appeals and the Texas Supreme Court. Plaintiff also seeks recovery of the additional sum of eighteen (18%) percent per year of the amount payable under the policy.

Unfair Claim Settlement Practices by Nationwide

11.1    After having received notice of plaintiff's losses Defendant, Nationwide, engaged in several unfair settlement practices, as enumerated and defined as unfair or deceptive in Section 541.060(a) of the Texas Insurance Code and Section 17.46(b) of the Texas Business and Commerce Code, including but not limited to the following:

    a.    Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the plaintiff's claim once the defendant's liability became reasonably clear.

    b.    Failing to provide promptly a reasonable explanation of the defendant's basis for its denial of the plaintiff's claim.

    c.    Refusing to pay the claim without first conducting a reasonable investigation of the matter.

11.2    The foregoing conduct by Defendant was done knowingly, that is with an actual awareness of the falsity, unfairness, or deception of the conduct described. Consequently, the plaintiff requests that the trier of fact award the plaintiff additional damages of up to three times the sum of actual damages suffered.

Breach of Duty of Good Faith and Fair Dealing

12.1    From and after the time Plaintiff presented his claim Nationwide, that defendant's liability to pay the claim in accordance with the terms of the insurance policy was reasonably clear that there was no basis on which a reasonable insurance company would have relied to deny payment. Despite that fact Nationwide refused to accept the claim and pay the claim as the policy required.

12.2    At that time, Nationwide knew or in the exercise of reasonable diligence would have known that its liability was reasonably clear; however, it failed to conduct a reasonable, proper investigation of the claim and refused to rely on the true facts, resorting instead to producing faulty, incomplete, and biased reasons as subterfuges to avoid paying a valid claim.

12.3    Consequently, Nationwide breached its duty to deal fairly and in good faith with Plaintiff. It's breach was a proximate cause of the losses, expenses, and damages suffered by the plaintiff as more specifically described below.

WHEREFORE, Plaintiff requests Defendants be cited to appear and answer and on final hearing the court enter judgment:

1.    Against Defendants, jointly and severally for actual damages in a sum as prayed for herein.
2.    Against Defendant, Nationwide, for additional damages in a sum as prayed for herein.
3.    Exemplary or enhanced damages against Nationwide in a sum in excess of the minimum jurisdictional limits of this court.
4.    Eighteen (18%) percent per annum on the actual damages from February 19, 2015, until the day before the judgment is signed and entered by the court.
5.    Plaintiff's reasonable attorney's fees against Defendants jointly and severally.
6.    Prejudgment and postjudgment interest at the highest rate allowed by law.
7.    Plaintiff's costs of court.
8.    All other relief to which Plaintiff may be entitled in equity or at law.

    Respectfully submitted
    Charles Tabet
    2600 McCullough Ave.
    San Antonio, Texas 78212
    (210) 572-7272 Telephone
    (210) 572-7575 Facsimile

/s/ Charles Tabet
Attorney for Plaintiff
T. B. N0. 19601550

**Nationwide®**
*On Your Side*

NATIONWIDE MUTUAL FIRE INS CO
ONE NATIONWIDE PLAZA
COLUMBUS, OH 43215-2220

42   86761
RENEWAL

# PREMIER BUSINESSOWNERS POLICY

### PREMIER RETAIL

### COMMON DECLARATIONS

| | |
|---|---|
| Policy Number: | ACP   BPRF  5563342985 |
| Named Insured: | HANNAH ENTERPRISE INC - DBA |
| | J&R MAHAL GROCERY |
| Mailing Address: | 1015 N SABINAS ST |
| | SAN ANTONIO, TX   78207-1613 |
| Agency: | PAT PANTUSA |
| Address: | SAN ANTONIO TX   78247-1943 |
| Agency Phone Number: | (210)599-4555 |

Policy Period:   Effective From 04-03-14   To 04-03-15
12:01 AM Standard Time at your principal place of business.

Form of your business entity: CORPORATION

Description of your business: CONVENIENCE STORE

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

**CONTINUATION PROVISION:** If we offer to continue your coverage and you or your representative do not accept,
this policy will automatically terminate on the expiration date of the current policy period stated above.  Failure to
pay the required premium when due shall mean that you have not accepted our offer to continue your coverage.
This policy will terminate sooner if any portion of the current policy period premium is not paid when due.

**RENEWAL POLICY NOTICE:** In an effort to keep insurance premiums as low as possible, we have streamlined
your renewal policy by not including printed copies of policy forms or endorsements that have not changed from
your expiring policies, unless they include variable information that is unique to you.  Refer to your prior policies for
printed copies of these forms.  If you have a need for any form, they are available by request from your agent.

**TOTAL POLICY PREMIUM $     2,088.00**

| Previous Policy Number | STATUS | I | | |
|---|---|---|---|---|
| ACP   BPRF  5553342985 | ENTRY DATE | 02-07-14 | Countersignature | Date |

These Common Policy Declarations, together with the Common Policy Conditions, Coverage Form Declarations,
Coverage Forms and any endorsements issued to form a part thereof, complete the Policy numbered above.

**PB 81 00 (01-01)**

Page 1 of 2
**EXHIBIT "E"**

DIRECT BILL     LD5S          MLF          AGENT COPY                UID     50          55   06624

# PREMIER BUSINESSOWNERS POLICY

**PREMIER RETAIL**

## SCHEDULE OF NAMED INSUREDS

| | | |
|---|---|---|
| Policy Number: **ACP   BPRF   5563342985** | From **04-03-14** | Policy Period:<br>To **04-03-15** |

Named Insured:

**HANNAH ENTERPRISE INC - DBA**
**J&R MAHAL GROCERY**

AGENT COPY

EXHIBIT "E"
55   06625

# NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
# MUTUAL COMPANY CONDITIONS ENDORSEMENT

**POLICYHOLDER MEMBERSHIP IN THE COMPANY**
(Applicable Only to Policies Issued by Nationwide Mutual Fire Insurance Company in States Other than the State of Texas)

Because this policy is issued by Nationwide Mutual Fire Insurance Company (the "Company"), the first named insured listed on the declarations page ("named insured") is a member of the Company issuing the policy while this or any other policy issued by the Company is in force. While a member, the named insured is entitled to one vote only – regardless of the number of policies issued to the named insured – either in person or by proxy at meetings of members of the Company.

The annual meeting of members of the Company will be held each year at the Home Office of the Company in Columbus, Ohio, at 9:30 a.m. on the first Thursday of April. If the Board of Directors of Nationwide Mutual Fire Insurance Company should elect to change the time or place of that meeting, the Company will mail notice of the change to the member's last known address. The Company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning that the named insured is not subject to any assessment beyond the premiums required for each policy term.

**POLICYHOLDER DIVIDEND PROVISIONS**

The named insured is entitled to any Dividends which are declared by the Board of Directors of the Company in accordance with law and which are applicable to coverages provided in this policy.

**POLICYHOLDER MEMBERSHIP IN THE COMPANY IN TEXAS**
(Applicable Only to Policies Issued by Nationwide Mutual Fire Insurance Company in the State of Texas)

**1. MUTUALS – MEMBERSHIP AND VOTING NOTICE.** The named insured is notified that, by virtue of this policy, the named insured is a member of the Nationwide Mutual Fire Insurance Company of Columbus, Ohio, (the "Company") and is entitled, as is lawfully provided in the charter, constitution, and by-laws to vote either in person or by proxy in any or all meetings of said Company. Each member is entitled to only one vote regardless of the number of policies owned. The annual meetings of the members of the Company are held in the Home Office, at Columbus, Ohio, on the first Thursday of April, in each year, at 9:30 o'clock a.m.

**2. MUTUALS – PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY.** No Contingent Liability: This policy is non-assessable. The named insured is a member of the Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

IN WITNESS WHEREOF: Nationwide Mutual Fire Insurance Company has caused this policy to be signed by its President and Secretary, and countersigned by a duly authorized representative of the

Secretary

President
Nationwide Mutual Fire Insurance Company

**SP 00 29 01 08**

ACP BPRF5563342985                      AGENT COPY

Page 1 of 1

55    06626

**EXHIBIT "E"**

# PREMIER BUSINESSOWNERS POLICY

## PREMIER RETAIL
### PROPERTY DECLARATIONS

Policy Number: **ACP BPRF5563342985**

Policy Period:
From **04-03-14** To **04-03-15**

Description of Premises Number: **001**    Building Number: **001**    Construction: **JOISTED MASONRY**
Premises Address  **1015 N SABINAS ST**                              **SAN ANTONIO        TX        78207-1613**
Occupancy  **T**      Classification: **CONVENIENCE STORES - SALES OF BEER & WINE LESS THAN 25% OF
GROSS SALES - NO GAS PUMPS - NO  COOKING**
Described as: **CONVENIENCE STORE**

WE PROVIDE INSURANCE ONLY FOR THOSE COVERAGES INDICATED BY A LIMIT OR BY "INCLUDED".

The Property Coverage provided at this premises is subject to a **$ 2,500** Deductible, unless otherwise stated.

| COVERAGES | LIMITS OF INSURANCE |
|---|---|
| Building - | NOT PROVIDED |
| Business Personal Property - Replacement cost | $72,100 |

**ADDITIONAL COVERAGES - the Coverage Form Includes other Additional Coverages not shown.**

| | |
|---|---|
| Business Income - ALS - 12 Months - NO Hour Waiting Period - 60 Day Ordinary Payroll Limit | INCLUDED |
| Extra Expense - Actual Loss Sustained (ALS) - 12 Months - NO Hour Waiting Period | INCLUDED |
| Equipment Breakdown | INCLUDED |
| Automatic Increase in Insurance - Building | 2% |
| Automatic Increase in Insurance - Business Personal Property | 2.9% |
| Back Up of Sewer and Drain Water (limit shown per Building, subject to $25,000  policy aggregate) | $5,000 |

| OPTIONAL INCREASED LIMITS | Included Limit | Additional Limit | |
|---|---|---|---|
| Account Receivable | $25,000 | | $25,000 |
| Valuable Papers and Records (At the Described Premises) | $25,000 | | $25,000 |
| Forgery and Alteration | $10,000 | | $10,000 |
| Money and Securities - Inside the Premises | $10,000 | | $10,000 |
| Outside the Premises (Limited) | $10,000 | | $10,000 |
| Outdoor Signs | $2,500 | | $2,500 |
| Outdoor Trees, Shrubs, Plants and Lawns | $10,000 | | $10,000 |
| Business Personal Property Away From Premises | $15,000 | | $15,000 |
| Business Personal Property Away From Premises - Transit | $15,000 | | $15,000 |
| Electronic Data | $10,000 | | $10,000 |
| Interruption of Computer Operations | $10,000 | | $10,000 |
| Building Property of Others | $10,000 | | $10,000 |

**OPTIONAL COVERAGES - Other frequently purchased coverage options.**

| | |
|---|---|
| Employee Dishonesty | NOT  PROVIDED |
| Ordinance or Law - 1 - Loss to Undamaged Portion | NOT  PROVIDED |
| 2 - Demolition Cost and Broadened Increased Cost of Construction | NOT  PROVIDED |
| Ordinance or Law Broadened | NOT  PROVIDED |

**PROTECTIVE SAFEGUARDS**
This premise has Protective Safeguards identified by symbols below.  Insurance for Fire or Burglary and Robbery
at this premise will be excluded if you do not notify us immediately if any of these safeguards are impaired.
See PB 04 30 for a description of each symbol. APPLICABLE SYMBOLS:  **P - 6 ;**

# PREMIER BUSINESSOWNERS POLICY

**PREMIER RETAIL**

**MORTGAGEE ASSIGNMENT INFORMATION**

Policy Number:   **ACP BPRF5563342985**

Policy Period:
From **04-03-14** To **04-03-15**

Additional Interest:       Interest Number:       Loan Number:
Interest:

Additional Interest:       Interest Number:       Loan Number:
Interest:

Additional Interest:       Interest Number:       Loan Number:
Interest:

Additional Interest:       Interest Number:       Loan Number:
Interest:

Additional Interest:       Interest Number:       Loan Number:
Interest:

Additional Interest:       Interest Number:       Loan Number:
Interest:

Additional Interest:       Interest Number:       Loan Number:
Interest:

Additional Interest:       Interest Number:       Loan Number:
Interest:

Additional Interest:       Interest Number:       Loan Number:
Interest:

Additional Interest:       Interest Number:       Loan Number:
Interest:

**EXHIBIT "E"**

55  06628

# PREMIER BUSINESSOWNERS POLICY
### PREMIER RETAIL

## LIABILITY DECLARATIONS

Policy Number:   **ACP   BPRF 5563342985**

Policy Period:
From **04-03-14**  To **04-03-15**

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit of Insurance | Per Occurrence | **$1,000,000** |
| Medical Payments Coverage Sub Limit | Per Person | **$1,000** |
| Tenants Property Damage Legal Liability Sub Limit | Per Covered Loss | **$300,000** |
| Personal and Advertising Injury | Per Person Or Organization | **$1,000,000** |
| Products – Completed Operations Aggregate | All Occurrences | **$2,000,000** |
| General Aggregate | All Occurrences | **$2,000,000** |
| (Other than Products – Completed Operations) | | |

## AUTOMATIC ADDITIONAL INSUREDS STATUS

The following persons or organizations are automatically insureds when you and they have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy.

Co-Owners of Insured Premises
Controlling Interest
Grantor of Franchise or License
Lessors of Leased Equipment
Managers or Lessors of Leased Premises
Mortgagee, Assignee or Receiver
Owners or Other Interest from Whom Land has been Leased
State or Political Subdivisions - Permits Relating to Premises

## PROPERTY DAMAGE DEDUCTIBLE
NONE

## OPTIONAL COVERAGES

Liquor Liability

Included in Each Occurrence Limit of Insurance
Subject to Products -
Completed Operations Aggregate

EXHIBIT "E"

# PREMIER BUSINESSOWNERS POLICY

### PREMIER RETAIL

## FORMS AND ENDORSEMENTS SUMMARY

Policy Number: **ACP  BPRF 5563342985**

Policy Period:
From **04-03-14**  To **04-03-15**

| FORM NUMBER | | TITLE |
|---|---|---|
| LI0021 | 0101 | NUCLEAR ENERGY LIABILITY EXCLUSION |
| PB0002 | 0411 | PREMIER BUSINESSOWNERS PROPERTY COVERAGE |
| PB0006 | 0411 | PREMIER BUSINESSOWNERS LIABILITY COVERAG |
| PB0009 | 0411 | PREMIER BUSINESSOWNERS COMMON POLICY CON |
| PB0412 | 0101 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES |
| PB0430 | 0411 | PROTECTIVE SAFEGUARDS |
| PB2998 | 0908 | EXCLUSION - VIOLATION OF CONSUMER PROTEC |
| PB2999 | 0411 | EXCLUSION - FUNGI OR BACTERIA |
| PB9042 | 1113 | TEXAS AMENDATORY ENDORSEMENT |
| PB6303 | 0101 | LIQUOR LIABILITY COVERAGE |
| PB0534 | 0108 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM; EXCLUSION - |
| PB0564 | 0108 | CONDITIONAL EXCLUSION OF TERRORISM - EXCLUSION OF WAR |

### IMPORTANT NOTICES

| | | |
|---|---|---|
| IN7158 | 0707 | IMPORTANT NOTICE |
| IN7159 | 0706 | TEXAS DISCLOSURE FORM |
| IN7590 | 1011 | DATA BREACH RESOLUTION SERVICES |
| IN7592 | 1011 | LIFESTAGES IDENTITY MANAGEMENT AND RESOLUTION SERVICES |
| IN7729 | 0613 | TEXAS PERIOD TO FILE A CLAIM OR BRING LEGAL ACTION AGAINST U |
| IN7291 | 0114 | POTENTIAL RESTRICTIONS OF TERRORISM COVERAGE |

PB 81 03 (06-12)

AGENT COPY

55  06630

EXHIBIT "E"

# PREMIER BUSINESSOWNERS POLICY

### PREMIER RETAIL
### AGENT PREMIUM SUMMARY

Policy Number:   **ACP  BPRF 5563342985**

Policy Period:
From **04-03-14** To **04-03-15**

| Loc /Bldg | Coverage | Limits | Premium |
|---|---|---|---|
| | **POLICY WIDE OPTIONAL COVERAGES** | | |
| | **NONE** | | |
| 01 01 | PERSONAL PROPERTY | 72,100 | 1,044 |
| | EQUIPMENT BREAKDOWN | INCLUDED | 88 |
| | LIABILITY | 1,000,000 | 397 |
| | LIQUOR LIABILITY | INCLUDED | 559 |
| | BUILDING TOTAL PREMIUM | | 2,088 |

If an * is shown for a coverage, then the limit shown is the additional amount of insurance for that coverage - see the Declarations page for the total amount.

**PB 81 PS (01-01)**

| DIRECT BILL | LD5S | MLF | AGENT COPY | | UID | 50 | **EXHIBIT "E"** 55  06631 |

EFFECTIVE DATE: 12:01 AM Standard Time,    **BUSINESSOWNERS**
    (at your principal place of business)    **PB AI 02 (01-01)**

# ACKNOWLEDGEMENT OF ADDITIONAL INSURED STATUS
# MANAGERS OR LESSORS OF LEASED PREMISES

**Person or Organization Designated as an Additional Insured:**

    **YOUSEF I RAFATI**

    **PO BOX 760157**
    **SAN ANTONIO**      **TX 78245**

**Designated Premises (Part Leased to the Named Insured):**

    **1015 N SABINAS ST**
    **SAN ANTONIO**      **TX 782071613**

This form has been sent to you to acknowledge your status as an additional insured under our, meaning the issuing Company stated below, insurance policy issued to the Named Insured shown below.

Under our Premier Businessowners Liability Coverage Form, Section II. WHO IS AN INSURED provides as follows:

    Any of the following persons or organizations are automatically insureds when you [i.e. the Named Insured stated below] and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

    <u>Managers or Lessors of Leased Premises</u>

    Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your use of that part of the premises leased to you, subject to the following additional exclusion:

    This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

    HOWEVER, their status as additional insured under this policy ends when you cease to be a tenant of such premises.

The policy language set forth above is subject to all of the terms and conditions of the policy issued to the Named Insured shown below. For your information, our Named Insured, the Policy Number, Policy Term and Limits of Insurance are stated below.

Named Insured      **HANNAH ENTERPRISE INC - DBA**

| | |
|---|---|
| Issuing Company: | **NATIONWIDE FIRE INS COMPANY** |
| Policy Number: | **ACP BPRF5563342985** |
| Policy Term: | **04-03-14 To 04-03-15** |
| Limits of Insurance: | **Per Occurrence**     **$1,000,000** |
| | **All Occurrences**     **$2,000,000** |

**PB AI 02 (01-01)**      **Page 1 of 1**

**EXHIBIT "E"**

BUSINESSOWNERS
PB 04 30 04 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM

### NOTICE

**YOU RISK THE LOSS OF CERTAIN INSURANCE COVERAGE AT PREMISES DESIGNATED IN THE DECLARATIONS IF YOU FAIL TO MAINTAIN ANY OF THE APPLICABLE PROTECTIVE SAFEGUARDS, LISTED BY SYMBOL IN THE DECLARATIONS FOR EACH PREMISES.**

Our requirement that you maintain the protective safeguard is in consideration of a premium reduction. If you do not wish to commit to the requirements expressed in this endorsement, at our option, your insurance may be continued. However, the credit for such protection would not be applied.

Your acceptance of this policy in the payment of premium when due constitutes your understanding and acknowledgement that you risk the loss of certain insurance at the premises designated if you fail to maintain the protective safeguard and your acceptance and agreement with the terms of this endorsement.

### SCHEDULE

**Prem. / Bldg. No.   Description of P-9 Protective Safeguard:**

A. **CONDITION.** As a condition of this insurance, you are required to maintain the applicable protective devices or services for fire, denoted by symbols P-1, P-2, P-3, P-4, P-5, P-8, or P-9; or for burglary and robbery, denoted by symbols P-6 or P-7), as designated at each premises by symbol in the Declarations.

B. **EXCLUSIONS.** Under Section B. EXCLUSIONS, the following exclusions are added:

1. **FIRE PROTECTIVE SAFEGUARDS**

   We will not pay for loss or damages caused by or resulting from fire if, prior to the fire, you:

   a. Knew or should have known of any suspension or impairment in any protective safeguard as designated at each premises by symbol in the Declarations and failed to notify us of that fact; or

   b. Failed to maintain any protective safeguard as designated at each premises by symbol in the Declarations and over which you have control, in complete working order; or

c. Add or modify any cooking equipment and operate it prior to adding or extending any Fire Suppression System that is required by code to protect it.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

2. **BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS**

   We will not pay for loss or damage caused by or resulting from theft if, prior to the theft, you:

   a. Knew or should have known of any suspension or impairment in any protective safeguard designated at each premises by symbol in the Declarations and failed to notify us of that fact; or

   b. Failed to maintain any protective safeguard designated at each premises by symbol in the Declarations and over which you had control, in complete working order.

**PB 04 30 04 11**   Includes copyrighted material of Insurance Services Office, Inc., with its permission.   **Page 1 of 2**

ACP BPRF5563342985   AGENT COPY   55    06633

**EXHIBIT "E"**

PB 04 30 04 11

C. **PROTECTIVE SAFEGUARD SYMBOLS.** The protective safeguards to which this endorsement applies are identified in the Declarations by the following symbols:

**"P-1"** **Automatic Sprinkler System**, including related supervisory services. Automatic Sprinkler System means:

a. Any automatic fire protective or extinguishing system, including connected:

1) Sprinklers and discharge nozzles;

2) Ducts, pipes, valves and fittings;

3) Tanks, their component parts and supports; and

4) Pumps and private fire protection mains.

b. When supplied from an automatic fire protective system:

1) Nonautomatic fire protective systems; and

2) Hydrants, standpipes and outlets.

**"P-2"** **Automatic Fire Alarm**, protecting the entire building, that is:

a. Connected to a central station; or

b. Reporting to a public or private fire alarm station.

**"P-3"** **Security Service**, with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4"** **Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5"** **Watchman Service** based on contract with a privately owned security company providing premises protection services to the described premises.

**"P-6"** **Local Burglar Alarm** protecting the entire building which in the event of an unauthorized or attempted entry at the described premises, triggers a loud sounding gong or siren, or a visual device, on the outside of the building.

**"P-7"** **Central Station Burglar Alarm** protecting the entire building which, in the event of an unauthorized or attempted entry at the described premises, will automatically transmit an alarm signal to an outside Central Station or police station.

**"P-8"** **Fire Suppression System**, including related supervisory services. Fire Suppression System means any automatic fire protective or extinguishing system designed to protect cooking equipment (i.e. cooking surfaces, deep fat fryers, grease ducts and hoods) including connected:

a. Sprinklers and discharge nozzles;

b. Ducts, pipes, valves and fittings; and

c. Tanks, their component parts and supports.

**"P-9"** The protective system described in the Schedule of this endorsement.

**All terms and conditions of this policy apply unless modified by this endorsement.**

**Page 2 of 2**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **PB 04 30 04 11**

ACP BPRF5563342985    **AGENT COPY**    55    06634

EXHIBIT "E"

CAUSE NUMBER ___**2016CV03123**___

| | | |
|---|---|---|
| HANNA SHALAKHTI | § | IN THE COUNTY COURT |
| VS. | | |
| | § | AT LAW N0. ___**CC# 03**___ |
| NATIONWIDE MUTUAL FIRE INSURANCE CO. AND ALARM SECURITY GROUP, LLC. D/B/A | | |
| ASG SECURITY | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS

TO:    Security Group, LLC., one of the Defendants herein

Pursuant to the Texas Rules of Civil Procedure, Hanna Shalakhti requests you to:

1.    Admit to the truth of each of the matters set forth in the requests herein;
2.    Answer fully and factually each of the Request for Admission hereinafter set forth; and
3.    Make a written response, sign same, and deliver it to the attorney of record for Plaintiff the first business day after the expiration of thirty (30) days after receipt hereof.  You are also instructed as follows:

   a.    If you do not admit the truth of the facts stated in a Request for Admission, you must specifically deny same, or set forth in detail the reasons why you cannot truthfully admit or deny such statement of fact;

   b.    Any admission made pursuant to these Requests apply to this action only, and is not an admission by you for any other purpose, and may not be used against you in any other proceedings;

   c.    Each matter for which an admission is requested shall be deemed admitted, unless you response is serve on the undersigned attorney during the time period set forth above;

   d.    If you deny a Request and the requesting party thereafter proves the truth of such matter, you may be ordered to pay the costs of suit, including Plaintiff's attorney's fees;

   e.    These questions are continuing in nature and require supplemental answers if you or your attorney get further information which makes the previous answer given incomplete or incorrect;

   f.    Your failure to timely respond as required by the Texas Rules of Civil Procedure to these Requests for Admissions will result in the Requests for Admissions being deemed admitted as a matter of law.

## DEFINITIONS

As used herein, the following terms shall have the meanings indicated below:

1.    "Document" means any printed, typewritten, handwritten, mechanically or otherwise recorded matter or whatever character, including, but without limitation, letters, purchase orders, memoranda, telegrams, notes, catalogues, brochures, diaries, reports, calendars,

inter- or intra-office communications, statements, investigative reports, announcements, depositions, Answers to Interrogatories, Pleadings, Judgments, Newspaper articles, and carbon or photographic copies of any such material if you do not have custody or control of the original.  If any such document requested to be identified was but is no longer in your possession or control, or is no longer in existence, please state whether it is:

    a.    Missing or lost;
    b.    Destroyed;
    c.    Transferred, voluntarily or involuntarily, to others, and if so, to whom; or
    d.    Otherwise disposed of, and in each instance explain the circumstances surrounding the authorization for disposition thereof, state the approximate date thereof, and describe its contents.

2.    "Possession, Custody, or Control" includes constructive possession whereby you have a right to compel the production of a matter, or to compel entrance from a third party.

3.    "Expert" includes an expert used for consultation and who is not expected to be called as a witness during trial, but those work product will form a basis, either in whole or in part, of the opinion of an expert who is to be called as a witness.

4.    "Report" means the mental impressions and opinions held by an expert and the facts known to the expert regardless of when the factual information was acquired which relates to or form the basis of mental impressions and opinions held by the expert.  A report includes documents and tangible reports, physical models, compilations of data and other material prepared by an expert, or for an expert in anticipation of the expert's deposition, or trial testimony, and further includes all tangible reports, physical models, compilation of data and other material prepared by an expert used for consultation regardless whether it was prepared in anticipation of litigation or trial, when such expert's report forms a basis either in whole or in part of the opinions of an expert who is to be called as a witness.

5.    "You and Your" mean the responding party to whom these questions are directed, as well as agents, employees, attorneys, investigators, and all other persons acting for that party.

6.    "Persons" mean natural person, corporations, partnerships, and all other entities.


REQUEST FOR ADMISSION N0. 1:

That at the time of the loss made the subject of this suit you had issued an insurance policy to Plaintiff to cover theft from his property located at 1015 North Sabinas St., San Antonio, Texas.

ANSWER:


REQUEST FOR ADMISSION N0. 2:

That the insurance policy you issued to cover Plaintiff's property at 1015 North Sabinas St., San Antonio, Texas was in effect on the date of this burglary.

ANSWER:


REQUEST FOR ADMISSION N0. 3:

That the Plaintiff sustained a loss at 1015 North Sabinas St., San Antonio, Texas, the evening of July 10, or the morning hours of July 11, 2014.

ANSWER:

REQUEST FOR ADMISSION N0. 4:

That the Plaintiff had a contract with you to monitor his store the subject of this suit at the time of this incident.

ANSWER:

REQUEST FOR ADMISSION N0. 5:

That the agreement to monitor Plaintiff's store was in effect at the time of this incident.

ANSWER:

REQUEST FOR ADMISSION N0. 6:

That Exhibit "G" attached hereto and incorporated herein is a true and correct copy of the agreement you had with Plaintiff to monitor his store that was in effect at the time of this incident.

ANSWER:

REQUEST FOR ADMISSION N0. 7:

That the Plaintiff had reported problems with his system to you before he was burglarized.

ANSWER:

REQUEST FOR ADMISSION N0. 8:

That Plaintiff had the alarm set on the day of the burglary.

ANSWER:

REQUEST FOR ADMISSION N0. 9:

That you were responsible for maintaining, guarding and monitoring any possible break-in at the business location.

ANSWER:

REQUEST FOR ADMISSION N0. 10:

That you had Plaintiff's system flagged on a test mode on the day of the burglary.

ANSWER:

REQUEST FOR ADMISSION N0. 11:

That you received notice from the alarm system at the store that the alarm was tripped on the date of the burglary.

ANSWER:

REQUEST FOR ADMISSION N0. 12:

That you received notice from the alarm system at the store that the alarm was tripped on the date of the burglary from different zones.

ANSWER:

REQUEST FOR ADMISSION N0. 13:

That you failed to call the Plaintiff to inform him that the alarm was being tripped.

ANSWER:

REQUEST FOR ADMISSION N0. 14:

That you failed to call the police and inform them that the alarm was being tripped.

ANSWER:

REQUEST FOR ADMISSION N0. 15:

That Plaintiff set the alarm after he finished work on the date of the burglary after he closed.

ANSWER:

REQUEST FOR ADMISSION N0. 16:

That Exhibit "C" attached hereto and incorporated herein for all purposes is a true and correct copy of the activity report you created and/or generated on Plaintiff's business that includes the day of the burglary.

ANSWER:

REQUEST FOR ADMISSION N0. 17:

That had you notified Plaintiff that the alarm was being tripped the loss from this burglary would have been foiled.

ANSWER:

REQUEST FOR ADMISSION N0. 18:

That had you notified the police that the alarm was being tripped the loss from this burglary would have been foiled

ANSWER:

Respectfully submitted,

Charles Tabet
2600 McCullough Ave.
San Antonio, Texas 78212
(210) 572-7272 Telephone
(210) 572-7575 Facsimile

/s/ Charles Tabet
Attorney for Plaintiff
T. B. N0. 19601550

12/16/2014  12:07    12105642699                    ASG SECURITY                        PAGE  01/01

12/16/2014 11:22                                                            ID: S.STRATTON

## Customer Activity Report

All Activity
JR Mahal Grocery
Customer ID: 43439476
Branch ID: 1400
07/09/2014 00:00:00 Thru 07/14/2014 23:59:59
[Customer's Local Time Zone]

| 43439476 | JR Mahal Grocery | 1015 North Sabinas |
|---|---|---|
| | (210) 212-9397 | San Antonio TX 78207 |

| Date | Day | Time | Log Description |
|---|---|---|---|
| 07/10/2014 | Thu | 11:51:59 | Temp On Test - Expired ID: 750471 - 00:06, 8 Jul to 11:51, 10 Jul - Selected: Reason: 'john' |
| 07/11/2014 | Fri | 07:05:23 | Comment - Pd Vicky called in with responder request saying their was a breaking in. The front door to the premise was open |
| | | 07:08:34 | Comment - Burtus ntfd of PD Responder Request says 20mins black Toyota |
| | | 07:10:31 | Comment - Pd Daniel ntfd of reponder info |
| | | 09:43:35 | Temp On Test - Entered ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
| | | 09:43:35 | Temp On Test - Started ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
| | | 10:00:19 | Sensor Tamper 'FRONT MOTION' |
| | | 10:02:28 | Tamper Restoral 'FRONT MOTION' |
| | | 10:06:54 | Sensor Tamper 'FRONT DOOR' |
| | | 10:08:18 | Tamper Restoral 'FRONT DOOR' |
| | | 10:15:49 | Temp On Test - Deleted ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
| | | 10:15:49 | Temp On Test - Stopped ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
| 07/12/2014 | Sat | 00:13:03 | Close By User [User No. 7] (System: 1 Area: 1) |
| | | 09:39:49 | Open by User [User No. 6] (System: 1 Area: 1) |
| 07/13/2014 | Sun | 00:12:34 | Close By User [User No. 7] (System: 1 Area: 1) |
| | | 09:18:30 | Open by User [User No. 6] (System: 1 Area: 1) |
| | | 23:10:37 | Close By User [User No. 7] (System: 1 Area: 1) |
| 07/14/2014 | Mon | 09:09:38 | Open by User [User No. 6] (System: 1 Area: 1) |
| | | 11:58:37 | Sensor Tamper 'FRONT DOOR' (Alarm) |
| | | 12:03:25 | Attention - Ask for Central station passcode when calling premise |
| | | 12:03:28 | Contact Customer - JR Mahal Grocery at Site [(210) 212-9397] - Result: Contacted |
| | | 12:04:27 | Contact Password Verified (password) |
| | | 12:04:30 | Response - - Viewed [04:35] View to Action [16 Secs] Actioned [04:51] |
| | | 12:04:40 | Customer Cancel |
| | | | Comment - John gv cstr pc for fa |
| | | | Close - Res: FA |
| | | | Resolution: FA - False Alarm |
| | | 11:59:12 | Tamper Restoral 'FRONT DOOR' |
| | | 23:12:51 | Close By User [User No. 7] (System: 1 Area: 1) |

**EXHIBIT "C"**

03/27/2015 13:54                                                                        ID: 4684

# Customer Activity Report

All Activity
JR Mahal Grocery
Customer ID: 43439476
07/10/2014 00:00:00 Thru 07/11/2014 23:59:59
[Customer's Local Time Zone]

**43439476**      **JR Mahal Grocery**                     **1015 North Sabinas**
                  **(210) 212-9397**                       **San Antonio TX 78207**

| Date | Day | Time | Log Description |
|------|-----|------|-----------------|
| 07/10/2014 | Thu | 11:51:59 | Temp On Test - Expired ID: 750471 - 00:06, 8 Jul to 11:51, 10 Jul - Selected: Reason: 'john' |
| 07/11/2014 | Fri | 07:05:23 | Comment - Pd Vicky called in with responder request saying their was a breaking in. The front door to the premise was open |
|  |  | 07:08:34 | Comment - Burtus ntfd of PD Responder Request says 20mins black Toyota |
|  |  | 07:10:31 | Comment - Pd Daniel ntfd of reponder info |
|  |  | 09:43:35 | Temp On Test - Entered ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
|  |  | 09:43:35 | Temp On Test - Started ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
|  |  | 10:00:19 | Sensor Tamper 'FRONT MOTION' |
|  |  | 10:02:28 | Tamper Restoral 'FRONT MOTION' |
|  |  | 10:06:54 | Sensor Tamper 'FRONT DOOR' |
|  |  | 10:08:18 | Tamper Restoral 'FRONT DOOR' |
|  |  | 10:15:49 | Temp On Test - Deleted ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
|  |  | 10:15:49 | Temp On Test - Stopped ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |

**EXHIBIT "C"**

**111401458**

# 1. PURCHASE, LEASE AND SERVICES AGREEMENT

*Corporate Info*
MAS #: 396300
Site #:
Job #:

**ASG SECURITY** (Alarm Security Group LLC)

Customer Billing Information
coophersrd    same as site
San Antonio TX 78217

THIS AGREEMENT made this __9__ day of __May__ 20__13__ , by and between Alarm Security Group LLC (ASG Security), hereinafter called the "Company" and __JR Halal Grocery__ hereinafter called the "Client", (at site address)
__1015 North Sabinas  San Antonio TX 78207__

1. **Agreement:** Company agrees to provide the system(s) ("System") and Monthly Services as described in section 1B, and in accordance with the Schedule of Protection (if applicable):

A. **Type of Transaction:** (check boxes that apply) ☐ System/Equipment Install/Purchase   ☐ Company Owned System   ☑ Monthly Services

B. **Services to be Provided:** (check all boxes that apply; amounts listed are represented in monthly charges)

| | | | | | |
|---|---|---|---|---|---|
| ☑ Burglar Alarm Monitoring | 19.05 | ☐ ASG Connect | | ☐ Fire Alarm Maint. (inc. Test&Ins) | |
| ☐ Panic/Hold-Up Monitoring | | ☐ ASG Managed Access | | ☐ Sprinkler Alarm Maintenance | |
| ☐ Fire Alarm Monitoring | | ☐ Burglar Alarm Maintenance | | ☐ Sprinkler Test & Inspect | |
| ☐ Sprinkler Alarm Monitoring | | ☐ Fire Alarm Maintenance | | ☐ Fire Alarm Insp  A B BM M Q SA W | |
| ☐ Elevator Monitoring | | ☐ Access Control Maintenance | | Billed: Upon Insp or In Advance | |
| ☐ Temp Alert Monitoring | | ☐ Video Surveillance System Maint. | | ☐ FA Sens Test  A B BM M Q SA W | |
| ☑ Cellular/Radio Service | 7.95 | ☐ Opening/Closing Log Only | | Billed: Upon Insp or In Advance | |
| ☐ DataLink | | ☐ Opening/Closing w/Schedules | | ☐ Other: | |
| | | ☐ O/C Reports  M W BW | | ☐ Administration Fee* | $3.99 |

(Complete 2A or 2B and/or 2C, as applicable)

**2A. System/Equipment Purchase:** The total price ("Price") of the equipment inclusive of the installation (if applicable) thereof shall be $_____ Dollars plus applicable taxes. The terms of payment are as follows: Deposit $_____ ; upon Delivery $_____ ; upon 100% completion $_____ . In the event of changes in cost of the System if request by the Customer or as required by local jurisdiction being supplied prior to the date of installation, Company reserves the right to adjust the price accordingly. Client shall be responsible for and shall pay to the Company the cost of any addition, changes and variances in the System, as herein contracted for or as installed, made at the request of or made necessary or required by Client's action, or which may be demanded by any governmental agency or insurance interests or inspection and rating bureaus that may be requested or required by or of the Client after the date of the execution of this Agreement. CLIENT ACKNOWLEDGES THAT CLIENT HAS CHOSEN THE SYSTEM AND THAT ADDITIONAL PROTECTION IS AVAILABLE AND MAY BE OBTAINED FROM COMPANY OVER AND ABOVE THAT PROVIDED HEREIN, AT AN ADDITIONAL COST TO CLIENT.

**2B. If Company Owned System:** (i) The Client hereby agrees to pay the Company, its agents or assigns the sum of $_____ for installation plus tax (if applicable) and the sum of $_____ per month plus tax (if applicable), payable ☐ monthly; ☐ quarterly; ☐ semi-annually; ☐ annually ("payment cycle") in advance on the first day of the said payment cycle, commencing with the payment cycle following completion of installation, for a period of five (5) years from the date service commences. The total monthly charge is subject to increase as set forth in subparagraphs (9.0). In addition, together with the first monthly payment, Client shall pay the pro rata share of the monthly charge for the month in which service commenced. (ii) At the expiration of the initial five (5) year period, this Agreement shall be automatically renewable for periods of two (2) years each, the first of such renewal periods to commence upon the date of the expiration of this Agreement, unless either party shall notify the other, in writing, not less than thirty (30) days prior to the expiration of the original agreement or the expiration of any renewal periods, of the desire to terminate this Agreement. Upon renewal, the Client shall continue to pay the current billing amount including any increases that may have occurred during the original term of this Agreement, according to the terms and conditions as set forth in this Agreement. *A monthly administration fee shall apply for both monthly and quarterly invoiced Clients (non-ACH or non-automatic credit card or bank draft payments).

**2C. Monthly Services:** (i) The Client hereby agrees to pay the Company, its agents or assigns the sum of $ __27.00__ Service/Monitoring Fee plus tax (if applicable) per month, payable ☑ monthly; ☐ quarterly; ☐ semi-annually; ☐ annually ("payment cycle"), in advance on the first day of the said payment cycle, commencing with the payment cycle following completion of the installation for a period of __two__ years from the date the service commences. The total monthly charge is subject to increase as set forth in subparagraphs (9.0), (9.1), (9.2) and (9.3). In addition, together with the first monthly payment, Client shall pay the pro rata share of the monthly charge for the month in which service commenced. (ii) At the expiration of the initial __two__ year period, this Agreement shall be automatically renewable for periods of two (2) years each, the first of such renewal periods to commence upon the date of the expiration of this Agreement, unless either party shall notify the other, in writing, not less than thirty (30) days prior to the expiration of the original agreement or the expiration of any renewal periods, of the desire to terminate this Agreement. Upon renewal, the Client shall continue to pay the current billing amount including any increases that may have occurred during the original term of this Agreement, according to the terms and conditions as set forth in this Agreement. A monthly administration fee shall apply for both monthly and quarterly invoiced Clients (non-ACH or non-automatic credit card or bank draft payments) *2 year contract with month to month renewals*

3. **Company's Liability/Disclaimer Warranties:** COMPANY DOES NOT REPRESENT OR WARRANT THAT THE SYSTEM MAY NOT BE COMPROMISED OR CIRCUMVENTED; OR THAT THE SYSTEM WILL PREVENT ANY LOSS BY BURGLARY, HOLDUP, FIRE, OR OTHERWISE; OR THAT THE SYSTEM WILL IN ALL CASES PROVIDE THE PROTECTION FOR WHICH IT IS INSTALLED OR INTENDED. CLIENT ACKNOWLEDGES AND AGREES THAT THE COMPANY HAS MADE NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING WITHOUT LIMITATION THE CONDITION OF EQUIPMENT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; NOR HAS CLIENT RELIED ON ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED. CLIENT FURTHER ACKNOWLEDGES AND AGREES THAT ANY AFFIRMATION OF FACT OR PROMISE SHALL NOT BE DEEMED TO CREATE AN EXPRESS WARRANTY, AND THAT THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF. CLIENT FURTHER ACKNOWLEDGES AND AGREES: THAT COMPANY IS NOT AN INSURER; THAT CLIENT ASSUMES ALL RISK OF LOSS OR DAMAGE TO CLIENT'S PREMISES OR TO THE CONTENTS THEREOF; AND THAT CLIENT HAS READ AND UNDERSTANDS ALL OF THIS AGREEMENT, PARTICULARLY PARAGRAPH 17 AND 18 WHICH SET FORTH LIMITATION OF LIABILITY AND INDEMNIFICATION PROVISIONS IN THE EVENT OF ANY LOSS OR DAMAGE TO CLIENT OR ANYONE ELSE.

*2 months credit* *No price increases for initial term*

**Schedule of Equipment to be Installed**

See Attachment: (If applicable) Schedule of Equipment and Pricing.

| ASG SECURITY (Alarm Security Group LLC) | Accepted by: |
|---|---|
| Sales Representative (Print/Signature) | John Abdallah    5-16-13 |
| | Client's Name    Date |
| Company Authorized Signature | Client's Authorized Signature    5-16-13 |
| Title | John Abdallah    Printed Name |
| Date    5-31-13 | 210 212 9397    5-16-13 |
| | Business Telephone    Date |

THIS AGREEMENT SHALL NOT BE BINDING UPON COMPANY UNLESS APPROVED IN WRITING BY AN AUTHORIZED SIGNATORY OF COMPANY. IN THE EVENT OF NON-APPROVAL, THE SOLE LIABILITY OF COMPANY SHALL BE TO REFUND THE CLIENT THE AMOUNT THAT HAS BEEN PAID TO COMPANY BY CLIENT UPON THE SIGNING OF THIS AGREEMENT.

License Numbers

| | | |
|---|---|---|
| DC: ECS901543 | NC: NCASLB: 1961-CSA, 20653-SP-LV | SC: BAC-13313 |
| DE: 02-71, FAL-0221 | NJ: 34BF00000500, 661309 | TX: B11180, ACR-2242, ECR-1767, HCR-410 |
| MA: 1608 C, SS CO 000986 | OK: 1036 | VA: 11-3605, 2705 098233A |
| MD: 107-714 | PA: PA062390 | Other License #: |

In the State of Texas, Company is licensed and regulated by the Texas Department of Public Safety, Private Security Bureau.
Complaints may be directed to: 5805 North Lamar Blvd., Austin, TX 78752-4422, 512-424-7710.
In the State of North Carolina, Company is licensed and regulated by the Alarm Systems Licensing Board
Complaints may be directed to: 4901 Glenwood Ave, Suite 200, Raleigh, NC 27612 919-788-5320.

**THIS IS A CONTRACT - READ ALL PAGES CAREFULLY**

EXHIBIT "G"

4. **Changes to the System; Cost of Repairs; Additional Protection; Risk of Loss:** The cost of any additions, changes and variances in the system, as herein evaluated for or as originally installed, made at the request of or made necessary or requested by Client's action, or which may be demanded by any governmental agency or insurance interest or inspection and rating bureaus, are to be paid by Client. CLIENT ACKNOWLEDGES THAT CLIENT HAS CHOSEN THE SYSTEM AND THAT ADDITIONAL PROTECTION IS AVAILABLE AND MAY BE OBTAINED FROM COMPANY OVER AND ABOVE THAT PROVIDED HEREIN, AT AN ADDITIONAL COST TO CLIENT. All risk of loss or damage to the system shall be borne exclusively by Client whose obligations hereunder shall not be diminished by any such loss or damage.

5. **Permit to Operate System:** Client acknowledges that in some local areas it is a requirement to obtain a permit or license to operate a system (intrusion, fire, access control, CCTV). Client agrees to obtain any permit that might be required, and the Client acknowledges that the cost, if any of the permit or license will be that of the Client's along with any additional charges that might be imposed on the Client. Client acknowledges that if a permit or license is not obtained, or the permit or license number is not provided to the Company, no dispatch to an emergency signal may be the result, and/or a fine from the local response agency may apply, which will be at the sole cost to the Client. Client agrees to maintain any permit or license during the term of this Agreement and for any accountal renewals of this Agreement.

6. **Installation of System, Delay of Installation, Interruption of Service:** Client authorizes and empowers Company to install or cause to be installed the protective system summarized on the Schedule of Protection. Client agrees that the work of installation shall be performed on weekdays only between the hours of 9:00 a.m. and 5:00 p.m., unless the Client directs otherwise, in which case, the Client hereby agrees to pay Company any resulting increased cost for installation. Should Company be forced to subcontract any portion of the installation due to any trade union jurisdiction dispute, the additional cost caused by such subcontracting shall be paid by the Client. Client authorizes use of electrical outlets required and necessary current through his meters, at his expense. Client shall, at his own expense, make any necessary repairs or changes to Client's premises, as requested by Company, and access to all needed areas, to facilitate the installation and operation of the system. Any error or omission in the construction or installation of the system must be called to the attention of the Company, in writing, within thirty (30) days after completion of installation. Otherwise, the installation shall be deemed totally satisfactory to and accepted by Client. Company assumes no liability for delay in installation of the equipment, or for interruption of service due to strikes, riots, floods, storms, earthquakes, fires, power failures, insurrection, interruption or unavailability of telephone service to Client while interruption of service due to any such cause may continue.

7A. **Service Inspections, Cost of Repairs:** Client authorizes and empowers Company to maintain and service the aforesaid system to make any necessary inspections, tests and repairs as required. In the case of fire alarm protection, Client will notify Company in writing of any change in its fire rating bureau or agency. If maintenance service has been contracted for, repairs occasioned by ordinary wear and tear shall be at Company's expense excluding battery changes, damages caused by the Client or third party, or damages caused by Acts of God (lightning, power surges, water damage or similar non-equipment failure), which shall be separately billed, and shall be performed as soon as reasonably possible after receipt of notice by Company from Client. Client shall be responsible for testing system monthly and informing company of any needed repairs. If time and material service has been requested, any necessary repairs shall be charged to Client at the Company's then prevailing labor and material rates. All necessary inspections, tests, or service calls which may be required on the part of the Company shall be performed between the hours of 9:00 am and 5:00 pm on normal business days. Client acknowledges the Company's obligation hereunder relates solely to the maintenance or repair of the specified system and that Company is in no way obligated to insure the operation of the system or to maintain a service Client's property or the property of others to which Company's system is connected. Client is responsible for paying all local, municipal and governmental false alarm fines. Trip charges may be applicable for both maintenance and non-maintenance clients.

7B. **Limited Warranty (System Purchase):** Company warrants the System to be delivered hereunder to be free from defects in material and/or workmanship for a period of ninety (90) days from the date of original installation. Upon expiration of such warranty period, or in the event such goods are subjected to misuse, negligence, alteration, improper repair, or any operated contrary to printed instructions, all warranty and liability of Company shall immediately cease.

If within the period of such warranty, the Client promptly notifies the Company of any claimed defect and it appears to Company that such part or parts are defective, Company will at its option repair such defective part or parts or replace the same with like or similar part or parts. The Company shall be responsible for all transportation and labor charges relating to installation of any replacement part or removal of a defective part.

It is expressly understood that the replacement of such defective part or parts by Company shall constitute the sole remedy of Client and the sole liability of Company, whether on warranty, contract, or negligence, and that Company shall not be liable for any other expense, injury, loss or damage, whether direct, incidental or consequential.

No representative of Company has any authority to waive, alter, vary, or add to the terms hereof without prior approval in writing accepted by an authorized representative of Company. All implied warranties including implied warranties of merchantability or fitness for a particular purpose, shall not exceed in duration the term of this limited warranty.

SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR THE EXCLUSION OR THE LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH MAY VARY FROM STATE TO STATE.

8. **Response to Alarm Signals, Telephone Line Requirements and System Testing:**

(a) **Central Station Alarms:** If Company has installed a central station alarm, Company or its designee, shall, without warranty, make every reasonable effort to do the following: (1) Upon receipt of a burglar alarm signal, transmit the alarm to headquarters of the local police authority and notify the Client or his designated representative by calling the telephone number designated in writing by Clients; (2) Upon receipt of holdup alarm signal, transmit the alarm to headquarters of the local police authority; (3) Upon receipt of manual, water flow, smoke or automatic fire alarm signal, transmit the alarm to local fire authority and notify Client or his designated representatives by calling the telephone number supplied to Company in writing by Client; (4) Upon receipt of a monitoring signal, notify Client or his designated representatives by calling the telephone number supplied to Company in writing by Client; (5) Upon receipt of an audio signal indicating an unauthorized entry into Client's premises, Company's operator will make every reasonable effort to identify the sound, when warranted transmit notice of said signal to the local police authority and notify the Client or his designated representatives by calling the telephone number supplied in writing by Client. In some cases the order or sequence or number of calls made to the Client or the Client's designees may be subject to the requirements of local or state jurisdictions governing the Client's site, or the Company.

(b) **Police and Fire Department Connected Alarms:** Client acknowledges that if the signals transmitted from Client premises will be monitored in municipal police and/or fire departments or other locations, that the personnel of such municipal police and/or fire department or other location that are not an agent of Company, the Company shall not assume any responsibility for the manner in which signals are monitored or the response, if any to such signals.

(c) **Standard Telephone Lines/Signal Disruption:** Client acknowledges that if the system is designed to operate over a standard "Analog" (POTS) telephone line, and in the event the Client's telephone service is of form of VoIP or other digital, fiber optics or other "non-standard" telephone service or in any other way interrupted, signals from the Client's system may not be received by the Company; and this interruption will not be known by the Company, and this interruption will not be known by the Company. Client acknowledges that this may render the system useless, and the Company is not able to guarantee operation over such signals. Client bears responsibility for providing a standard Analog phone line in working order or to notify the Company in the event of transferring phone service to any other non-standard Analog service. Client acknowledges that if a non-standard Analog phone service is established thereby requiring additional monitoring equipment and ethernet communication service, additional installation and monthly monitoring charges will apply in order to modify the Client's system.

(d) **System Testing:** It is recommended that the Client test the operation of their system which includes transmitting a test signal to the central station at a minimum of every thirty (30) days. Failure to do so could result in the Company being unaware of a phone line interruption which could result in alarm signals not being received at the central station. This monthly test is not a substitute for a specifically designed phone line backup system, but is recommended ensuring a long-term phone line outages or system malfunctions do not occur.

(e) **Cellular/Radio/GSM (Wireless) Signal Transmitters:** Client acknowledges that if Wireless Signal Transmission is utilized as the primary, secondary or exclusive signal transmission, and the Cellular/Radio service is in anyway disrupted, no signal transmission will be received from the Client's site. Additionally, unless "Opening/Closing services are offered by the Client, the Client's system is designed to only transmit signals in the event of an emergency (alarm) event. Without the enabling of Opening/Closing services, neither the Company nor the Client can validate if the Client's system is in the armed (on) status. The Company shall not be responsible for the failure to receive an emergency (alarm) signal event from the Client's site address.

9. **Increase in Monthly Charges:** Company shall have the right, at any time, to apply a monthly administrative billing fee (for non auto-payment Clients) and/or increase the monthly charges provided herein to reflect increases in federal, state and local taxes, utility charges including telephone company line charges, and municipal fees and charges, which hereinafter are imposed on Company and which relate to the services provided under this Agreement, and Client agrees to pay such increased monthly charges.

9.1 In addition, to the increases set forth above, but no more often than once during any twelve month period Company shall also have the right to increase the monthly charges called for during the term of this agreement by a percentage equal to 1.5 times the percentage increase in the Department of Labor Consumer Price Index, (all items), since the effective date of this Agreement or since the date of the last such increase pursuant to this sub-paragraph (9.1), whichever date is later, and Client agrees to pay such increased monthly charges.

9.2 As an alternative to sub-paragraph (9.1), but no more than once during any twelve month period, the Company shall have the option to increase the monthly charges provided herein by a percentage not to exceed 20% per year since the date of the last such increase pursuant to this paragraph (9.2). Said 20% per year increase shall be in lieu of all other increases in each year (excluding an administration fee) provided for in sub-paragraph (9.1). If Client objects in writing within thirty (30) days from the effective date of the increase being imposed pursuant to this sub-paragraph (9.2), the Company shall have forty-five (45) days to respond following receipt of such written objection. If Company fails to respond in the aforementioned time period, the Company may choose to reduce the increase in accordance with sub-paragraph (9.1), which Client agrees to pay. Client's failure to object in writing within the said thirty (30) days from the increase pursuant to this sub-paragraph (9.2) shall constitute the Client's acceptance of the increase.

10. **Authorized Personnel, Opening & Closing Schedules:** Client agrees to furnish forthwith a written list of the names, titles, residence and cellular telephone numbers of all persons authorized to arrange an unscheduled event and/or authorized to enter or remain on the premises of Client during the regularly scheduled closed period, and/or notified in the event of an alarm. Client agrees to keep such call list current. If Opening and Closing Schedules are to be included in the Clients service, the Client (with daily/weekly and holiday Opening and Closing Schedule. All changes, additions, modifications to the above shall be supplied to Company in writing. Failure by the Client to provide the Company with Opening and Closing Schedules shall remove the Client from this service and the only obligation of the Company shall be a refund of the specific charges for this service for up to six (6) months.

11. **Title to Equipment, Removal of System (Company Owned Systems):** Client acknowledges and agrees that this Agreement is for the providing of service and that except as hereinafter provided, the major components installed herein, including but not limited to transmitters, detection services, bell boxes and controls shall at all times remain the sole property of Company. Upon the expiration of this Agreement or upon any default as herein set forth, Company is authorized to enter upon premises of Client and to remove all of the Company owned equipment. Removal of Company owned equipment shall be without prejudice to the collection of any and all sums due under the entire contract or extension or renewals thereof. Client shall, in such event, return the said Company owned equipment to Company in good condition, reasonable wear and tear excepted. If the Client requests the Company owned equipment to remain in place or refuses to allow the Company to remove the Company owned equipment. The Client acknowledges there will be a charge applied (equipment charge) equal to the current market value for all major components, and the Client agrees to these charges.

Upon completion of the installation, title to all of the non-removable equipment, materials, supplies including but not limited to, wire, cable, field conduit, screws and the labor for the installation of the system shall vest in the Client. Notwithstanding the foregoing, during the term of this Agreement, Client will not change, encumber, tamper with or dispose of any portion of this system or permit the system to be damaged, encumbered, taken from the premises, tampered with or repaired by anyone who is not an authorized agent of Company. In the event of loss or damage to any portion of this system, whether owned by the Company or Client, Client agrees to pay the Company the reasonable value for the replacement or repair of the Company owned equipment or the installation on the Client's premises. Client agrees that the installation of the Company owned equipment does not create a fixture to Client's premises as to that equipment. The Client acknowledges that if a system owned by the Client requires maintenance/repair service, if required/requested it is available for an additional monthly charge.

12. **Suspension or Cancellation of this System/Service:** This Agreement may be suspended or executed, without notice at the option of Company, if Company's or Client's premises or equipment is destroyed by fire or other catastrophe, or so substantially damaged that it is impractical to continue service, or in the event Company is unable to render service as a result of any action by any governmental agency.

13. **Delinquency & Reconnect Charges, Interest Charges:** In the event the payment due hereunder is more than ten (10) days delinquent, Company may impose and collect a delinquency charge of 1.50% per month (18% per annum), or the highest amount under law, whichever is less, of the amount of the delinquency. Client acknowledges and agrees that the delinquency payment or nonpayment of the amounts due hereunder may be deemed by the Company to be a material breach of contract on the part of Client, and, at Company's option, in addition to all other legal remedies available, shall excuse it from further performance under this Agreement, upon the giving of ten (10) days written notice to Client. Company's excuse from performance shall not affect its right to recover all amounts owing pursuant to this Agreement including damages from Client or to recover Company owned equipment from Client's premises. If the system is deactivated because of Client's past due balance, and if Client desires to have system reactivated, Client agrees to pay in advance to Company a reconnect charge as fixed by Company if reasonable in amount.

14. **Change in Ownership of Client's Premises:** Client acknowledges that the sale or transfer of Client's premises shall not relieve Client of his duties and obligations under this Agreement. Client may not assign this Agreement or permit anyone to take subject to this Agreement without written consent of the Company.

15. **Assigns/Subcontractors of Company:** Company shall have the right to assign this Agreement to any other person, firm or corporation without notice to Client and shall have the further right to subcontract any installation and/or service, including services hereunder. Client acknowledges that this Agreement, and particularly those paragraphs relating to Company's disclaimer of warranties, maximum liability, limitation of liability, and third party indemnification, inure to the benefit of and are applicable to any assignees and/or subcontractors, and they bind Client with respect to said assignees and/or subcontractors with the same force and effect as they bind Client to Company.

16. **Default by Client:** If the Client fails to make any payment as agreed herein, or becomes insolvent, or makes an assignment for the benefit of creditors, or a petition is filed by or against the Client under the Bankruptcy Act or any amendment thereto, including a petition for reorganization, arrangement or extension, or if any representative, warranty or financial information made or submitted by Client shall be untrue or unperformed in any material respect, or if Client defaults hereunder in any other respect, the entire amount then due under this Agreement for the balance of the unperformed term of the Agreement period shall become immediately due and payable.

In the case of a Company Owned System, the Client hereby consents, in the event of default or non-renewal of this Agreement, to the Company immediately entering the aforesaid premises or any other premises where the property of said Company may be located for the purpose of removing the equipment belonging to the Company. Upon the expiration of this Agreement or any renewal thereof, or upon the happening of any other contingency set forth herein, the Company may immediately enter said premises and remove all its property, and remove the equipment with or without process of law and without liability for damage to persons or property arising out of such entry or taking of possession. Removal of the equipment by the Company shall not be considered to constitute a waiver of any of the rights under the terms of this Agreement, nor shall the Company be for any normal damage caused to the premises by installation or removal of its equipment. Client acknowledges and agrees that the equipment of which the system is composed is totally interchangeable with Company's inventory, and therefore the Company has no obligation to place or use said equipment in any other place before using any of it at any other inventory, nor any obligation to account for or credit Client with the value of use of any such removed equipment. Company shall not be responsible for damages caused to Client's premises by reason of the removal of the system from Client premises.

17. **Company Is Not an Insurer; Limitation of Liability:** It is understood and agreed that Company is not an insurer, that insurance, if any, shall be obtained by Client; that the payments provided for herein are based on the value of the services as set forth herein and are unrelated to the value of the Client's property or the property of others located on the Client's premises; that Company makes no guaranty or warranty, including any implied warranty of merchantability or fitness that the equipment or services supplied will avert or prevent occurrences or the consequences there from which the system or service is designed to detect or avert. Client acknowledges that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from a failure to perform any of the obligations herein, including, but not limited to installation, service, monitoring or the failure of the system to properly operate with resulting loss to Client because of, among other things; (a) The uncertain amount or value of the Client's property or the property of others lost on the premises which may be lost, stolen, destroyed, damaged or otherwise affected by occurrences which the system or service is designed to detect or avert; (b) The uncertainty of the response time of any police or fire department, should this be the system or service designed, if any; (c) The inability to ascertain what portion, if any, of any loss would be proximately caused by Company's failure to perform or by its equipment to perform; (d) The nature of the service to be performed by Company.

Client understands and agrees that if Company should be found liable for personal injury or property loss or damage from failure of Company to perform any of Company's obligations herein, including, but not limited to installation, maintenance, monitoring, service or the failure or malfunction of the system or equipment in any respect whatsoever, Company's liability shall be limited to a sum equal to the total of six (6) monthly payments or Two Hundred Fifty ($250.00) Dollars, whichever is lesser, and this liability shall be exclusive; and that the provisions of this Section shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from performance or nonperformance of any obligation imposed by this contract or from negligence, active or otherwise of Company, its agents, servants, assigns or employees.

18. **Third Party Indemnification:** In the event any person, not a party to this Agreement, shall make any claim, or file any lawsuit against Company for any reason relating to Company's duties and obligations pursuant to this Agreement, including but not limited to the design, installation, maintenance, operation or non-operation of the system. Client agrees to indemnify, defend and hold Company harmless from any and all claims and lawsuits including the payment of all damages, expenses, costs and attorney's fees, whether these claims be based upon alleged intentional conduct, active or passive negligence, express or implied contract or warranty, contribution or indemnification, or strict or product liability on the part of Company, its agents, servants, assigns or employees.

18.1 Subject to Client to indemnify Company against third party claims as hereinabove set forth shall not apply to losses, damages and liability resulting in injury or death to third person, and/or losses or damages to property of third person, which losses, damages and liability occur solely and directly caused by the acts of said employees of Company.

19. **Hazards, Asbestos:** You have the affirmative duty to inform us, prior to beginning installation, of every location at his premises where we should not (because of concealed obstructions or hazards such as pipes, wires or asbestos) enter or drill holes. Unless so notified, we will determine where to drill holes and place equipment. We will take reasonable precautions to avoid concealed obstructions but cannot, by the nature of determining which circumstance, if any exist. If asbestos or other hazardous material is encountered during installation, we will cease work until you have, at your sole expense, obtained clearance from a licensed asbestos removal or hazardous material contractor that continuation of work will not pose any danger to our personnel. In no case shall we be liable for discovery or exposure of hidden asbestos or other hazardous material.

20. **Client's Purchase Order:** Client acknowledges that if there is any conflict between the Agreement and Client's purchase order or other document, the Agreement will govern, whether such purchase order or other documents is prior or subsequent to this Agreement.

21. **Attorney's Fees:** In the event it shall become necessary for Company to institute legal proceedings to collect the cost of installation or the monthly service charge as set forth herein, then in such proceeding the unsuccessful party shall pay to the successful party reasonable attorney's fees when permitted by law.

22. **Invalid Provisions:** In the event any of the terms or provisions of this Agreement shall be declared to be invalid or inoperative, all of the remaining terms and provisions shall remain in full force and effect.

23. **Notice:** All notices to be given hereunder shall be in writing and may be served, either personally or by mail, postage prepaid.

24. **Gender:** Whenever the context requires in this Agreement, the masculine gender herein used shall include the feminine and the singular number shall include the plural.

25. **Paragraph Headings:** The paragraph titles used herein are for the convenience of the parties only and shall not be considered in construing the provisions of this Agreement.

26. **Prior Agreements:** Client warrants and represents that the Client is not under any enforceable agreement with any other party concerning systems of any kind and furthermore Client shall be held harmless Company against all claims, demands, suits, expenses and damages by judgment or otherwise, which may now be made and/or hereafter be incurred as a result of or arising out of any agreement that Client may have entered into with any party concerning any such systems of every kind and description. Client will sign all notes, renewals or termination of any such agreement, or for the defeat of such claims or suit and reasonable attorney's fees incurred in the enforcement of this indemnity provision.

27. **Entire Integrated Agreement; Modification; Alteration; Waiver:** This writing is intended by the parties as a final expression of their Agreement and as a complete and exclusive statement of the terms thereof. This entire Agreement supersedes all prior representations, understandings or agreements of the parties both written and verbal and the parties rely only upon the contents of this Agreement in executing it. This Agreement can only be modified by a writing signed by the parties or their duly authorized agent. No waiver of a breach of any term or condition of this Agreement shall be construed to be a waiver of any succeeding breach. Any modifications or alterations to the standard terms and conditions contained herein must be initialed and acknowledged by both parties.

Client: _____

Initial ___ #0.12

**EXHIBIT "G"**

5|9|13        #3196300

Date of Transaction

**ASG**
SECURITY

## ALARM or USER PERMIT REQUIREMENT - NOTIFICATION

JR Alarm Security Group LLC (ASG Security, Argus Security, TnT Security Services), the (Company) does hereby notify you Mahal Grocery , (the Client) that it is your responsibility to obtain, at your sole cost all required alarm/user permits as regulated by your local police or fire department (municipality). In some cases this required permit must be renewed annually. Please check with your local municipality.

Failure to obtain the required alarm/user permit may result in fines as assessed by your local municipality who have jurisdiction, and all such fines shall be the responsibility of the Customer regardless of the circumstances.

Once you have obtained or renewed your alarm/user permit, it is your responsibility to report your alarm/user permit number to ASG Security by updating online at www.asgsecurity.com under My ASG, faxing a copy to 301-210-2837 or e-mailing your permit number and expiration date to datachanges@asgsecurity.com.

Some municipalities may refuse to dispatch emergency personnel to your location if no alarm/user permit has been obtained and/or if it is not listed at the monitoring station at the time of dispatch. Your system may not be considered "active" in the monitoring station without this permit information.

**Please initial, indicating your understanding of this Alarm Permit Requirement and Notification.**     Customer Initials: ___JA___

## PHONE LINE PROTECTION - VOIP-CABLE MODEM-'DIGITAL' PHONE SERVICE NOTIFICATION

The Company recommends that all Clients utilize a cellular/radio (GSM) signal transmission as their primary signal transmission method, or minimally install the GSM service as a back-up to their 'standard' (analog) phone service (which is at an additional installation and monthly cost if added after the original installation) which allows for signal transmission in the event of a 'standard' phone line failure/outage.

The Company further notifies the Client that if the installed system is set-up to operate over a standard (non-internet-based) phone line, and the Client discontinues their standard phone service or changes their phone service after the monitoring service has been established, the Client's monitoring service may be disrupted (no communication will be received by the Company) and the Company will not be aware of this service disruption. Non-standard phone services include but are not limited to, DSL, cable modem, VOIP ('Vonage', 'U-Verse', 'Bongo'), 'Magic Jack' or similar digital/internet based technology. It is the responsibility of the Client to notify the Company of any phone line changes. Any additional equipment required to re-establish signal monitoring communication is at the Client's sole expense and will result in additional monthly monitoring charges.

**Please initial, indicating your understanding of Phone Line Protection, Phone Service Requirement**     Customer Initials: ___JA___

## NOTICE OF UNDERSTANDING REGARDING TAKEOVER OF EXISTING SYSTEM

The Company is not responsible for the original design, scope or operational condition or failure of the Client's equipment or wiring as installed by a third party. The Company shall test the existing security devices at the time of a Takeover, but in no way warrants the Client owned system. Should there be a defect of the Client's system, devices or wiring at the time of Takeover or should there be a failure of the Client's equipment or wiring in the future, all required repairs or equipment replacement(s) shall be at the Client's sole expense.

**Please initial, indicating your understanding of issues related to Takeover of Existing System.**     Customer Initials: ___JA___

## NOTICE OF CANCELLATION (Applicable to Residential Customers Only)

You, the Client, may cancel this transaction without penalty or obligation within three (3) business days from the date listed above. If you cancel, any property traded in, any payments made or any negotiable instrument executed by you under the contract or transaction will be returned within ten (10) business days following receipt by the Seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the Company at your residence in substantially as good condition as when received, any goods delivered to you under this contract or transaction, or you may if you wish, comply with the instructions of the Company regarding the return shipment of the goods at the Company's expense and risk.

If you make the goods available to the Company and the Company does not pick them up within twenty (20) days from the date of your Notice of Cancellation, you may return or dispose the goods without any further obligation. If you fail to make the goods available to the Company or if you agree to return the goods to the Company and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail, fax or e-mail a signed and dated copy of this Notice of Cancellation to: ASG Security at 12301 Kiln Ct., Suite A, Beltsville, MD 20705, 301-210-2839 (fax), cancel@asgsecurity.com, no later than midnight on _____

I acknowledge receiving a copy of this form:       _____ /3/       5-16-13
                                                   Client's Signature                Date

I HEREBY CANCEL THIS TRANSACTION:       _____       _____
                                        Client's Signature          Date

                                        _____       _____
                                        Print Name                  City/State

White—Company Copy   •   Yellow—Office Copy   •   Pink—Client Copy

EXHIBIT "G"    v 1.11

CAUSE NUMBER <u>2016CV03123</u>

| | | |
|---|---|---|
| HANNA SHALAKHTI | § | IN THE COUNTY COURT |
| VS. | | |
| | § | AT LAW N0. <u>CC# 03</u> |
| NATIONWIDE MUTUAL FIRE INSURANCE CO. AND ALARM SECURITY GROUP, LLC. D/B/A ASG SECURITY | § | BEXAR COUNTY, TEXAS |

<u>PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS</u>

TO:    Nationwide Mutual Fire Insurance Co., one of the Defendants herein

Pursuant to the Texas Rules of Civil Procedure, Hanna Shalakhti requests you to:

1.    Admit to the truth of each of the matters set forth in the requests herein;
2.    Answer fully and factually each of the Request for Admission hereinafter set forth; and
3.    Make a written response, sign same, and deliver it to the attorney of record for Plaintiff the first business day after the expiration of thirty (30) days after receipt hereof.  You are also instructed as follows:

   a.    If you do not admit the truth of the facts stated in a Request for Admission, you must specifically deny same, or set forth in detail the reasons why you cannot truthfully admit or deny such statement of fact;

   b.    Any admission made pursuant to these Requests apply to this action only, and is not an admission by you for any other purpose, and may not be used against you in any other proceedings;

   c.    Each matter for which an admission is requested shall be deemed admitted, unless you response is serve on the undersigned attorney during the time period set forth above;

   d.    If you deny a Request and the requesting party thereafter proves the truth of such matter, you may be ordered to pay the costs of suit, including Plaintiff's attorney's fees;

   e.    These questions are continuing in nature and require supplemental answers if you or your attorney get further information which makes the previous answer given incomplete or incorrect;

   f.    Your failure to timely respond as required by the Texas Rules of Civil Procedure to these Requests for Admissions will result in the Requests for Admissions being deemed admitted as a matter of law.

DEFINITIONS

As used herein, the following terms shall have the meanings indicated below:

1.    "Document" means any printed, typewritten, handwritten, mechanically or otherwise recorded matter or whatever character, including, but without limitation, letters, purchase orders, memoranda, telegrams, notes, catalogues, brochures, diaries, reports, calendars,

inter- or intra-office communications, statements, investigative reports, announcements, depositions, Answers to Interrogatories, Pleadings, Judgments, Newspaper articles, and carbon or photographic copies of any such material if you do not have custody or control of the original.  If any such document requested to be identified was but is no longer in your possession or control, or is no longer in existence, please state whether it is:

    a.    Missing or lost;
    b.    Destroyed;
    c.    Transferred, voluntarily or involuntarily, to others, and if so, to whom; or
    d.    Otherwise disposed of, and in each instance explain the circumstances surrounding the authorization for disposition thereof, state the approximate date thereof, and describe its contents.

2.    "Possession, Custody, or Control" includes constructive possession whereby you have a right to compel the production of a matter, or to compel entrance from a third party.

3.    "Expert" includes an expert used for consultation and who is not expected to be called as a witness during trial, but those work product will form a basis, either in whole or in part, of the opinion of an expert who is to be called as a witness.

4.    "Report" means the mental impressions and opinions held by an expert and the facts known to the expert regardless of when the factual information was acquired which relates to or form the basis of mental impressions and opinions held by the expert.  A report includes documents and tangible reports, physical models, compilations of data and other material prepared by an expert, or for an expert in anticipation of the expert's deposition, or trial testimony, and further includes all tangible reports, physical models, compilation of data and other material prepared by an expert used for consultation regardless whether it was prepared in anticipation of litigation or trial, when such expert's report forms a basis either in whole or in part of the opinions of an expert who is to be called as a witness.

5.    "You and Your" mean the responding party to whom these questions are directed, as well as agents, employees, attorneys, investigators, and all other persons acting for that party.

6.    "Persons" mean natural person, corporations, partnerships, and all other entities.

REQUEST FOR ADMISSION N0. 1:

That at the time of the loss made the subject of this suit you had issued an insurance policy to Plaintiff to cover theft from his property located at 1015 North Sabinas St., San Antonio, Texas.

ANSWER:

REQUEST FOR ADMISSION N0. 2:

That the insurance policy you issued to cover Plaintiff's property at 1015 North Sabinas St., San Antonio, Texas was in effect on the date of this burglary.

ANSWER:

REQUEST FOR ADMISSION N0. 3:

That the Plaintiff sustained a loss at 1015 North Sabinas St., San Antonio, Texas, the evening of July 10, or the morning hours of July 11, 2014.

ANSWER:


REQUEST FOR ADMISSION N0. 4:

That the Plaintiff made a demand for coverage for that loss he sustained on you.

ANSWER:


REQUEST FOR ADMISSION N0. 5:

That Plaintiff completed the documents you requested of him and returned them to you.

ANSWER:


REQUEST FOR ADMISSION N0. 6:

That you denied coverage for the theft loss Plaintiff sustained at 1015 North Sabinas St., San Antonio, Texas as a result of this incident.

ANSWER:


REQUEST FOR ADMISSION N0. 7:

That you received an explanation from the Plaintiff that his alarm at the business had been malfunctioning at the time the loss occurred.

ANSWER:


REQUEST FOR ADMISSION N0. 8:

That you received a copy of the document attached as Exhibit "A" to these requests prior to denying this claim.

ANSWER:


REQUEST FOR ADMISSION N0. 9:

That you received a copy of the document attached as Exhibit "B" to these requests prior to denying this claim.

ANSWER:

REQUEST FOR ADMISSION N0. 10:

That you received a copy of the document attached as Exhibit "C" to these requests prior to denying this claim.

ANSWER:

REQUEST FOR ADMISSION N0. 11:

That you received a copy of the document attached as Exhibit "D" to these requests prior to denying this claim.

ANSWER:

REQUEST FOR ADMISSION N0. 12:

That the document attached as Exhibit "E" to these requests is a true and correct copy of the insurance policy that was in effect at the time this burglary took place.

ANSWER:

REQUEST FOR ADMISSION N0. 13:

That but for your conclusion that the Plaintiff did not set the alarm on the date of this loss this claim would be a covered incident.

ANSWER:

REQUEST FOR ADMISSION N0. 14:

That the sole reason you denied coverage of this claim is because you concluded that the Plaintiff did not set the alarm on his property on the date of loss.

ANSWER:

REQUEST FOR ADMISSION N0. 15:

That you sent the attached Exhibit "F" attached to these requests to Plaintiff.

ANSWER:

REQUEST FOR ADMISSION N0. 16:

That Exhibit "F" attached to these requests contains the sole reasons why you denied coverage of this claim.

ANSWER:

Respectfully submitted,

Charles Tabet
2600 McCullough Ave.
San Antonio, Texas 78212
(210) 572-7272 Telephone
(210) 572-7575 Facsimile


/s/ Charles Tabet_____
Attorney for Plaintiff
T. B. N0. 19601550

From: Hannah Enterprises Inc , Dba J&R Mahal Grocery
105 N. sabinos san anton TX 78205

claim number: 7842PE105745

## CONTENTS LOSS INVENTORY

| # | No. of Items | Item Description: Model No., Serial No., Brand, etc. | PLACE OF PURCHASE & PURCHASE DATE (mo/yr) | ORIGINAL COST | REPLACEMENT COST | REPAIR COST |
|---|---|---|---|---|---|---|
| 1 | 100 | silica cartons | | 10 | | 1000 |
| 2 | 9 | F Hookah cd65 mh | | 10 | | 90 |
| 3 | 12 | E Hookah llooMao | | 12 | | 144 |
| 4 | 2 | w/p 10" chanelion | | 80 | | 160 |
| 5 | 2 | w/p Romk clear | | 65 | | 130 |
| 6 | 4 | w/p 12" zigzag clear | | 35 | | 140 |
| 7 | 3 | w/p 14" clear w/white leaf | | 50 | | 150 |
| 8 | 10 | w/p 10 clear patches | | 14 | | 140 |
| 9 | 10 | w/p 8" soft Blue/clear | | 12 | | 120 |
| 10 | 12 | pipe 4" Liquid | | 10 | | 120 |
| 11 | 13 | pipe Blue clear mint | | 10 | | 130 |
| 12 | 8 | pie Blue Tip 4" inknot | | 12 | | 96 |
| 13 | 90 | pie " MUSUROOM pipe | | 10 | | 90 |
| 14 | 16 | pipe 4" Blue Bowl chrome 10 | | 9 | | 144 |

CLAIM NUMBER: 78 42 PE 105745 07112014 51

INSURED'S SIGNATURE: _____  Page No. _1_ of _5_

INSURED'S SIGNATURE (SPOUSE): _____

NOTE: If you have more damaged items than this form allows, photostatic copies of this form are permitted.

EXHIBIT "A"

**CONTENTS LOSS INVENTORY**

| # | No. of Items | Item Description: Model No., Serial No., Brand, etc. | PLACE OF PURCHASE & PURCHASE DATE (mo/yr) | ORIGINAL COST | REPLACEMENT COST | REPAIR COST |
|---|---|---|---|---|---|---|
| 1 | 40 | 2.5 fancy | | 3.5 | | 140 |
| 2 | 12 | 3 pcs Bubblen eye | | 15 | | 180 |
| 3 | 11 | Bubbler, chanks | | 18 | | 198 |
| 4 | 7 | Buferchan | | 10 | | 70 |
| 5 | 6 | Bubbler Blackandw | | 20 | | 120 |
| 6 | 8 | Bubbler 1 Troeplue | | 25 | | 200 |
| 7 | 60 | Hitter Gold | | 4 | | 240 |
| 8 | 20 | Hitte Med | | 5 | | 100 |
| 9 | 21 | Bowl with bowsler | | 9 | | 189 |
| 10 | 8 | A/c ilkobrd | | 25 | | 200 |
| 11 | 5 | A/c ikor straw | | 40 | | 200 |
| 12 | 89 | Hither minonsidint | | 2 | | 178 |
| 13 | 35 | animal pipe | | 10 | | 350 |
| 14 | 30 | Downla tree show | | 8 | | 240 |

CLAIM NUMBER: 78 42 PE 105745 07112014 51

INSURED'S SIGNATURE: _____   Page No. 2 of 3

INSURED'S SIGNATURE (SPOUSE): _____

NOTE: If you have more damaged items than this form allows, photostatic copies of this form are permitted.

**EXHIBIT "A"**

## CONTENTS LOSS INVENTORY

| # | No. of Items | Item Description: Model No., Serial No., Brand, etc. | PLACE OF PURCHASE & PURCHASE DATE (mo/yr) | ORIGINAL COST | REPLACEMENT COST | REPAIR COST |
|---|---|---|---|---|---|---|
| 1 | 25 | caps 20 set | | 7 | | 175 |
| 2 | 7 | shirts seatsret | | 39 | | 273 |
| 3 | 18 | Ecigrat vpe volt | | 15 | | 270 |
| 4 | | Ecig vApoRano Poth zipper | | 35 | | 210 |
| 5 | 45 | slider wmie cup | | 2 | | 90 |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |

CLAIM NUMBER: 78 42 PE 105745 07112014 51

INSURED'S SIGNATURE: _____   Page No. _3_ of _3_

INSURED'S SIGNATURE (SPOUSE): _____

**NOTE:** If you have more damaged items than this form allows, photostatic copies of this form are permitted.

**EXHIBIT "A"**

**SAN ANTONIO POLICE DEPARTMENT SUPPLEMENTARY PROPERTY LOSS REPORT** | Case Number: *14- 150356*

| | | |
|---|---|---|
| Offense: *Burglary Building Force* | Location of Offense: *7615 N. Sabinas* | Patrol District: *2320 A* |
| Date(s) of Occurrence: *07-11-14* | Time of Occurrence: *0045- 0052* | Date of Report: *07-11-14* |
| Reporting Officer: *N. Molina* | Report Received By: | Date Received: |

Det. Assigned: ☐ Auto Theft ☐ Robbery ☒ Property Crime ☐ Other Unit:

**Please read instructions on reverse side before completing this form**

Victim or name and type of business:

Residence Address: | Residence Phone:

Business Address: | Business Phone:

I am aware of the fact that it is unlawful to make a false report to a police officer. I affirm that the information below is true and I wish to assist in the prosecution of any person(s) responsible for the offense described above. I understand this data may be computerized in local, state and national files.

| Qty | Article | Yes | No | Unknown | Brand | Serial Number | Model number | Miscellaneous Description | Current Value |
|---|---|---|---|---|---|---|---|---|---|
| 4 | | ☐ | ☐ | ☐ | *Malboro* | | | *CARTON of CIGARETTES* | *2531.42* |
| 25 | | ☐ | ☐ | ☐ | | | | *TOBACCO miscellaneous* | *500.⁰⁰* |
| 25 | | ☐ | ☐ | ☐ | | | | *SHIRTS* | *100* |
| | | ☐ | ☐ | ☐ | | | | *HATS* | *175* |
| | | ☐ | ☐ | ☐ | | | | *CASH money In SAFE* | |
| | | ☐ | ☐ | ☐ | | | | *AND REGESKVRS* | *8519.* |
| | | ☐ | ☐ | ☐ | | | | *Cash ...* | |
| | | ☐ | ☐ | ☐ | | | | *DOOR DAMAGE* | *2500* |
| | | ☐ | ☐ | ☐ | | | | *Laptop Toshiba* | *499* |
| | | ☐ | ☐ | ☐ | | | | *contacts* | |
| | | ☐ | ☐ | ☐ | | | | *cash Kealer* | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | ☐ | | | | | |

Signature of person reporting: | Relationship: | Date: *10-29-*

**EXHIBIT "B"**

12/16/2014  12:07   12105642699              ASG SECURITY              PAGE  01/01

12/16/2014 11:22                                                      ID: S.STRATTON

## Customer Activity Report

All Activity
JR Mahal Grocery
Customer ID: 43439476
Branch ID: 1400
07/09/2014 00:00:00 Thru 07/14/2014 23:59:59
[Customer's Local Time Zone]

| 43439476 | JR Mahal Grocery | 1015 North Sabinas |
|---|---|---|
| | (210) 212-9397 | San Antonio TX 78207 |

| Date | Day | Time | Log Description |
|---|---|---|---|
| 07/10/2014 | Thu | 11:51:59 | Temp On Test - Expired ID: 750471 - 00:06, 8 Jul to 11:51, 10 Jul - Selected: Reason: 'john' |
| 07/11/2014 | Fri | 07:05:23 | Comment - Pd Vicky called in with responder request saying their was a breaking in. The front door to the premise was open |
| | | 07:08:34 | Comment - Burius ntfd of PD Responder Request says 20mins black Toyota |
| | | 07:10:31 | Comment - Pd Daniel ntfd of reponder info |
| | | 09:43:35 | Temp On Test - Entered ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
| | | 09:43:35 | Temp On Test - Started ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
| | | 10:00:19 | Sensor Tamper 'FRONT MOTION' |
| | | 10:02:28 | Tamper Restoral 'FRONT MOTION' |
| | | 10:06:54 | Sensor Tamper 'FRONT DOOR' |
| | | 10:08:18 | Tamper Restoral 'FRONT DOOR' |
| | | 10:15:49 | Temp On Test - Deleted ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
| | | 10:15:49 | Temp On Test - Stopped ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
| 07/12/2014 | Sat | 00:13:03 | Close By User [User No. 7] (System: 1 Area: 1) |
| | | 09:39:49 | Open by User [User No. 6] (System: 1 Area: 1) |
| 07/13/2014 | Sun | 00:12:34 | Close By User [User No. 7] (System: 1 Area: 1) |
| | | 09:18:30 | Open by User [User No. 6] (System: 1 Area: 1) |
| | | 23:10:37 | Close By User [User No. 7] (System: 1 Area: 1) |
| 07/14/2014 | Mon | 09:09:38 | Open by User [User No. 6] (System: 1 Area: 1) |
| | | 11:58:37 | Sensor Tamper 'FRONT DOOR' (Alarm) |
| | | 12:03:25 | Attention - Ask for Central station passcode when calling premise |
| | | 12:03:28 | Contact Customer - JR Mahal Grocery at Site [(210) 212-9397] - Result: Contacted |
| | | 12:04:27 | Contact Password Verified (password) |
| | | 12:04:30 | Response - - Viewed [04:35] View to Action [16 Secs] Actioned [04:51] |
| | | 12:04:40 | Customer Cancel |
| | | | Comment - John gv cstr po for fa |
| | | | Close - Res: FA |
| | | | Resolution: FA - False Alarm |
| | | 11:59:12 | Tamper Restoral 'FRONT DOOR' |
| | | 23:12:51 | Close By User [User No. 7] (System: 1 Area: 1) |

**EXHIBIT "C"**

03/27/2015 13:54                                                                    ID: 4684

# Customer Activity Report

All Activity
JR Mahal Grocery
Customer ID: 43439476
07/10/2014 00:00:00 Thru 07/11/2014 23:59:59
[Customer's Local Time Zone]

**43439476**     **JR Mahal Grocery**                    **1015 North Sabinas**
                 **(210) 212-9397**                      **San Antonio  TX  78207**

| Date | Day | Time | Log Description |
|------|-----|------|-----------------|
| 07/10/2014 | Thu | 11:51:59 | Temp On Test - Expired ID: 750471 - 00:06, 8 Jul to 11:51, 10 Jul - Selected: Reason: 'john' |
| 07/11/2014 | Fri | 07:05:23 | Comment - Pd Vicky called in with responder request saying their was a breaking in. The front door to the premise was open |
| | | 07:08:34 | Comment - Burtus ntfd of PD Responder Request says 20mins black Toyota |
| | | 07:10:31 | Comment - Pd Daniel ntfd of reponder info |
| | | 09:43:35 | Temp On Test - Entered ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
| | | 09:43:35 | Temp On Test - Started ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
| | | 10:00:19 | Sensor Tamper 'FRONT MOTION' |
| | | 10:02:28 | Tamper Restoral 'FRONT MOTION' |
| | | 10:06:54 | Sensor Tamper 'FRONT DOOR' |
| | | 10:08:18 | Tamper Restoral 'FRONT DOOR' |
| | | 10:15:49 | Temp On Test - Deleted ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |
| | | 10:15:49 | Temp On Test - Stopped ID: 753458 - 09:43 to 12:43, 11 Jul - Whole Customer Reason: 'On-test from BoldNet Mobile' |

Customer Activity Report                     Page 1/1

**EXHIBIT "C"**

GLI DISTRIBUTING
803 SOUTH MEDINA ST.
P. O. BOX 830728
SAN ANTONIO    TX 78283-0000
210. 226. 4376

INVOICE NO.    82297

INVOICE DATE   7/31/14

ROUTE # 600
SEG# 070
SLSM# 060

11010 70317-1          P001
J&R MAHAL GROCERY
1015 N SABINAS
SAN ANTONIO    TTX/78207-0000

7/30/14   18:41:07   CJMO

| UPC CODE | DESCRIPTION | PROD | QTY | PRICE | DISC | NET PRICE | EXTENDED AMOUNT |
|---|---|---|---|---|---|---|---|
| 0-52300-00024-20000 | OLD MIL 4/6/16 CN | 1216 | 3 | 19.25 | 3.45 | 15.80 | 47.40 |
| 0-52300-00143-00000 | SHZ HGH GRV 12/24CN | 1650 | 2 | 13.44 | 1.84 | 11.60 | 23.20 |
| 0-73360-18754-40000 | LN STAR 4/6/16 CN | 2016 | 1 | 20.40 | 2.05 | 18.35 | 18.35 |
| 0-73360-19754-30000 | LN STAR LT 4/6/16 CN | 2116 | 3 | 20.40 | 2.05 | 18.35 | 55.05 |
| 0-34100-00217-60000 | MICKEY 12/24 CN | 2866 | 4 | 13.44 | 1.84 | 11.60 | 46.40 |
| 0-34100-00622-80000 | OL ENG 12/40 NR | 3840 | 1 | 20.60 | .00 | 20.60 | 20.60 |
| 0-72311-23012-40000 | DOS EQ LG 2/12/12NR | 5010 | 3 | 28.75 | 2.40 | 26.35 | 79.05 |
| 0-72311-17015-40000 | DOS EQ LG 12/24 NR | 5033 | 1 | 25.90 | .00 | 25.90 | 25.90 |
| 0-89826-90033-60000 | TECATE 2/12/12CN | 6009 | 1 | 20.10 | .95 | 19.15 | 19.15 |
| 0-89826-90020-60000 | TECATE LT 2/12/12CN | 6109 | 2 | 20.10 | .95 | 19.15 | 38.30 |

**** CASH ****                    21                    373.40

IC# 11/15/13 BG790216          GALLONAGE:
                               BEER:   35.75  MALT:   17.25  WINE:

I received the above product and am authorized by TABC to carry
these items. _____

Reason for Non-Delivery:              Payment:

Refused Order_____          Cash_____

Could Not Pay_____           M. O. #_____

Not Open_____           T. C. #_____

Other_____           Check#_____

Rekey_____  Void_____           Other_____

**EXHIBIT "D"**

```
GLI DISTRIBUTING                              INVOICE NO.      74450
803 SOUTH MEDINA ST.
P. O. BOX 830728                             INVOICE DATE   7/17/14
SAN ANTONIO    TX 78283-0000
210.226.4376
```

```
                                            ROUTE # 600
11010 70317-1            P001                SEQ# 070
J&R MAHAL GROCERY                            SLSM# 060
1015 N SABINAS                     7/16/14   18:47:29   CJMO
SAN ANTONIO    TTX/78207-0000
```

| UPC CODE | DESCRIPTION | PROD | QTY | PRICE | DISC | NET PRICE | EXTENDED AMOUNT |
|---|---|---|---|---|---|---|---|
| -52300-00416-50000 | OLD MIL 12/24 CN | 1224 | 5 | 14.44 | 2.84 | 11.60 | 58.00 |
| -52300-00026-60000 | OLD MIL 12/32 NR | 1232 | 2 | 20.20 | 2.43 | 17.75 | -35.50 |
| -52300-00143-00000 | SHZ HGH GRV 12/24CN | 1650 | 2 | 13.44 | .00 | 13.44 | 26.88 |
| -73360-18111-50000 | LN STAR 12/24 CN | 2010 | 1 | 15.00 | 1.56 | 13.44 | 13.44 |
| -73360-18754-40000 | LN STAR 4/6/16 CN | 2016 | 1 | 20.40 | 2.05 | 18.35 | 18.35 |
| -73360-19702-40000 | LN STAR LT 12/24 CN | 2110 | 2 | 15.00 | 1.56 | 13.44 | 26.88 |
| -73360-19754-30000 | LN STAR LT 4/6/16 CN | 2116 | 2 | 20.40 | 2.05 | 18.35 | 36.70 |
| -34100-00217-60000 | MICKEY 12/24 CN | 2868 | 5 | 13.44 | 1.84 | 11.60 | 58.00 |
| -86573-33200-10000 | SH BK 12/24 NR | 4266 | 1 | 20.55 | .00 | 20.55 | 20.55 |
| -72311-17015-40000 | DOS EQ LG 12/24 NR | 5033 | 2 | 25.90 | .00 | 25.90 | 51.80 |
| -72311-32124-20000 | DOS EQ LG 12/24 CN | 5045 | 2 | 25.90 | .00 | 25.90 | 51.80 |
| -89826-00004-30000 | CAR BLANCA 12/32 NR | 6005 | 1 | 22.50 | 2.45 | 20.05 | 20.05 |
| -89826-90020-60000 | TECATE LT 2/12/12CN | 6109 | 3 | 20.10 | .95 | 19.15 | 57.45 |
| -87692-00196-60000 | TWIS LMNADE 12/24 CN | 7468 | 1 | 20.15 | 1.95 | 18.20 | 18.20 |
| -87692-83231-70000 | TWIS TEA 12/24 CN | 7471 | 1 | 20.15 | 1.95 | 18.20 | 18.20 |
| -87692-75231-80000 | TWIS HALF&HALF 12/24 | 7474 | 1 | 20.15 | 1.95 | 18.20 | 18.20 |
| -72311-13232-90000 | SOL 12/32 NR | 8410 | 1 | 22.50 | 2.45 | 20.05 | 20.05 |

```
     **** CASH ****                  35 7                      550.05
                                                              -35.50
IC# 11/15/15 BG790216        GALLONAGE:                       514.55
                              BEER   63.75   MALT:   15.75   WINE:
```

I received the above product and am authorized by TABC to carry
these items. _____

*Essa*

```
Reason for Non-Delivery:          Payment:

Refused Order_____         Cash_____

Could Not Pay_____         M. O. #_____

Not Open_____         T. C. #_____

Other_____         Check#_____

Rekey_____ Void_____          Other_____
```

**EXHIBIT "D"**

OLI DISTRIBUTING
903 SOUTH MEDINA ST.
P. O. BOX 630726
SAN ANTONIO      TX 78283-0000
210.226.4376

INVOICE NO.    78383
INVOICE DATE   7/23/14

11010 70317-1           P001
J&R MAHAL GROCERY
1015 N SABINAS
SAN ANTONIO     TTX/78207-0000

ROUTE # 600
SEG# 070
SLSM# 060
7/23/14.  19:16:01   CUMO

| UPC CODE | DESCRIPTION | PROD | QTY | PRICE | DISC | NET PRICE | EXTENDED AMOUNT |
|----------|-------------|------|-----|-------|------|-----------|-----------------|
| ~52300-00416-80000 | OLD MIL 12/24 CN | 1224 | 5 | 14.44 | 2.84 | 11.60 | 58.00 |
| ~73360-19702-40000 | LN STAR LT 12/24 CN | 2110 | 1 | 15.00 | 1.56 | 13.44 | 13.44 |
| ~73360-19754-30000 | LN STAR LT 4/6/16 CN | 2116 | 2 | 20.40 | 2.05 | 18.35 | 36.70 |
| ~34100-00217-60000 | MICKEY 12/24 CN | 2868 | 6 | 13.44 | 1.84 | 11.60 | 69.60 |
| ~34100-00522-80000 | OL ENG 12/40 NR | 3640 | 1 | 20.60 | .00 | 20.60 | 20.60 |
| ~72311-23012-40000 | DOS EG LG 2/12/12NR | 5010 | 3 | 28.75 | 2.40 | 26.35 | 79.05 |
| ~69826-90030-60000 | TECATE 2/12/12CN | 6009 | 1 | 20.10 | .95 | 19.15 | 19.15 |
| ~69826-90020-60000 | TECATE LT 2/12/12CN | 6109 | 2 | 20.10 | .95 | 19.15 | 38.30 |

**** CASH ****                     21                          334.84

IC# 11/19/13 BQ790216          GALLONAGE:
                               BEER:  33.00  MALT:  17.23  WINE:

I received the above product and am authorized by TABC to carry

these items. _____

Reason for Non-Delivery:        Payment:

Refused Order_____         Cash_____

Could Not Pay_____         M.O.#_____

Not Open_____              T.C.#_____

Other_____                 Check#_____

Rekey_____ Void_____      Other_____         **EXHIBIT "D"**

GLI DISTRIBUTING
803 SOUTH MEDINA ST.
P.O. BOX 830728
SAN ANTONIO    TX 78283-0000
210.226.4376

INVOICE NO.        7C548

INVOICE DATE   7/10/14

11010 70317-1          #001
J&R MAHAL GROCERY
1013 N SABINAS
SAN ANTONIO    TTX/78207-0000

ROUTE # 600
SEQ# 070
SLSM# 060

7/09/14   18:46:34   CUMO

| UPC CODE | DESCRIPTION | PROD | QTY | PRICE | DISC | NET PRICE | EXTENDED AMOUNT |
|---|---|---|---|---|---|---|---|
| )-52300-00024-20000 | OLD MIL 4/6/16 CN | 1216 | 1 | 17.25 | 3.45 | 15.80 | 15.80 |
| )-52300-00143-00000 | BUZ HGH GRV 12/24CN | 1650 | 1 | 13.44 | .00 | 13.44 | -13.44 |
| )-73360-19702-40000 | LN STAR LT 12/24 CN | 2110 | 1 | 15.00 | 1.56 | 13.44 | -13.44 |
| X-73360-19754-30000 | LN STAR LT 4/6/16 CN | 2116 | 1 | 20.40 | 2.05 | 18.35 | 18.35 |
| -24100-00622-80000 | OL ENG 12/40 NR | 3940 | 1 | 20.60 | .00 | 20.60 | 20.60 |
| )-72311-23012-40000 | DOS EQ LG 2/12/12NR | 5010 | 3 | 28.75 | 2.40 | 26.35 | 79.05 |
| )-89826-90020-60000 | TECATE LT 2/12/12CN | 6109 | 3 | 20.10 | .95 | 19.15 | -57.45 |

**** CASH ****          11 6          218.13.

IC# 11/15/15 BQ790216          GALLONAGE:
BEER:   21.75   MALT:   6.00   WINE:

-13.44
204.69
-70.89
133.80

I received the above product and am authorized by TABC to carry
these items.

Reason for Non-Delivery:          Payment:

Refused Order_____          Cash_____

Could Not Pay_____          M.O.#_____

Not Open_____          T.C.#_____

Other_____          Check#_____

Rekey_____Void_____          Other_____          **EXHIBIT "D"**

```
            NOVELTY WHOLESALE              Invoice No: 5573
          2639 MOSSROCK STE. 110
         SAN ANTONIO, TEXAS  78230         Date: 04/16/14
              210-340-1162
                                          Page: 1


    Sold To: PETER GO                 Customer No: 297
             JR GROCERY               Phone No: 2105485262
             1017 SABINA RD
             SAN ANTONIO, TX
                                      Cust Balance:      0.00

      Ship To:
             SAN ANTONIO, TX
```

Cust. Order #: 5573                  Salesperson: #1  –

| Product Code | Item Description | Qty | Unit Price | Amount |
|---|---|---|---|---|
| 924 | SILICA CONTACT LENS | 120 | 10.00 | 1200.00 |
| 1887 | EHOOKAH CE4 650mAh | 10 | 10.00 | 100.00 |
| 1873 | EHOOKAH CE5 1100 MAH | 10 | 12.00 | 120.00 |
| 1942 | EHOOKAH: EVOD/ VAPE SHOCK | 10 | 13.00 | 130.00 |
| 728028208702 | EHOOKAH GALAXY VAPES ALTERNATI | 10 | 18.00 | 180.00 |
| 1901 | EHOOKAH DRY HERB | 10 | 20.00 | 200.00 |
| 351 | W/P 10" CHAMELION CHARATER | 2 | 80.00 | 160.00 |
| 361 | W/P ROOR CLEAR | 2 | 65.00 | 130.00 |
| 463 | W/P 12" ZIGZAG CLEAR | 4 | 35.00 | 140.00 |
| 315 | W/P 14" CLEAR W/ WHITE LEAF | 3 | 50.00 | 150.00 |
| 894 | W/P 8" SOFT COLORS HEAVY G/G | 4 | 15.00 | 60.00 |
| 691 | W/P 14" CLEAR 1PERC | 6 | 45.00 | 270.00 |
| 319 | W/P 6" REG CLEAR W.WIDE B | 6 | 14.00 | 84.00 |
| 462 | W/P12"CLEAR PATCHES | 6 | 30.00 | 180.00 |
| 494 | W/P8"SOFT BLUE/GREEN | 6 | 12.00 | 72.00 |
| 599 | PIPE 3"BLACK AND WHITH | 24 | 6.00 | 144.00 |
| 1749 | PIPE 4" SURLUCK DESIGN | 36 | 8.00 | 288.00 |
| 606 | PIPE 4"LIQUID | 10 | 10.00 | 100.00 |
| 613 | PIPE BLUE CLEAR MINI GANDOLPH | 10 | 10.00 | 100.00 |
| 685 | PIPE BLUE TIP 4" IN/OUT | 8 | 12.00 | 96.00 |

(Continued on Next Page ...)

**EXHIBIT "D"**

```
            NOVELTY WHOLESALE                      Invoice No: 5573
            2639 MOSSROCK STE. 110                 Date: 04/16/14
            SAN ANTONIO, TEXAS   78230
                210-340-1162                        Page: 2
```

```
Sold To: PETER GO                     Customer No: 297
         JR GROCERY                   Phone No: 2105485262
         1017 SABINA RD
         SAN ANTONIO, TX
                                      Cust Balance:      0.00

Ship To:
         SAN ANTONIO, TX
```

Cust. Order #: 5573               Salesperson: #1   -

| Product Code | Item Description | Qty | Unit Price | Amount |
|---|---|---|---|---|
| 611 | PIPE4"BLUE BOWL-CHAM I/O | 12 | 9.00 | 108.00 |
| 609 | PIPE4"MUSHROOM PIPE | 6 | 10.00 | 60.00 |
| 728 | PIPES 4" COLORED STRIPP | 36 | 4.00 | 144.00 |
| 1431 | PIPES: 2.5" FANCY | 60 | 3.50 | 210.00 |
| 712 | PIPES: 2.5" OUTSIDE | 96 | 2.50 | 240.00 |
| 1457 | PIPES: 3 PCS BUBBLER HAND PIPE | 6 | 15.00 | 90.00 |
| 1144 | BUBBLER 2 CHAMBER COLOR | 5 | 18.00 | 90.00 |
| 618 | BUBBLER CHAM W/HANDLE | 5 | 10.00 | 50.00 |
| 682 | BUBBLER: BLACK N WHITE | 3 | 20.00 | 60.00 |
| 1280 | BUBBLER: 1 TREE PERC PITCHER | 4 | 25.00 | 100.00 |
| 578 | 1 HITTER GOLD FUMED LONG | 24 | 4.00 | 96.00 |
| 861 | 1 HITTER: MED I/O COLOR SPIRAL | 12 | 5.00 | 60.00 |
| 1273 | BOWL WITH DOWNSTEM | 12 | 9.00 | 108.00 |
| 1667 | A/C: 11 COLORED ARM PERC | 3 | 25.00 | 75.00 |
| 716 | A/C: CLEAR 5 TREES PERC OILER | 3 | 40.00 | 120.00 |
| 1906 | 1 HITTER: MINI INSIDE OUT | 100 | 2.00 | 200.00 |
| 621 | ANIMAL PIPE ELEPHANTS | 10 | 10.00 | 100.00 |
| 975 | DOWNTEM TREE/ SHOWER | 12 | 8.00 | 96.00 |
| 1698 | SLIDER: WINNIE CUP | 50 | 2.00 | 100.00 |
| 728028208733 | E CIG GALAXY VAPE VOLT CHANGER | 25 | 15.00 | 375.00 |

(Continued on Next Page ...)

**EXHIBIT "D"**

```
         NOVELTY WHOLESALE                    Invoice No: 5573
         2639 MOSSROCK STE. 110               Date: 04/16/14
       SAN ANTONIO, TEXAS  78230
           210-340-1162                       Page: 3
```

```
Sold To: PETER GO                  Customer No: 297
         JR GROCERY                Phone No: 2105485262
         1017 SABINA RD
         SAN ANTONIO, TX
                                   Cust Balance:      0.00

   Ship To:
           SAN ANTONIO, TX
```

Cust. Order #: 5573              Salesperson: #1   -

| Product Code | Item Description | Qty | Unit Price | Amount |
|---|---|---|---|---|
| 1753 | E-CIG VAPOR ZONE 2 PACK ZIPPER | 12 | 35.00 | 420.00 |
| 839 | TSHIRTS: STYLEWEAR/ COTTON NET | 7 | 39.00 | 273.00 |
| 793 | CAPS: 210/ SATOWN/ TX/ YOLO | 37 | 7.00 | 259.00 |

```
                                      Sub-Total:      7338.00
                                              :
                                      Shipping:          0.00
                                Tax [    0]:      EXEMPT  *
                                      ===================
                                      Total:        7338.00
                                      Paid Cash:    7338.00
                                      ===================
           Thank you for your order!  Amount Paid:  7338.00
          No returns or exchanges     Amount Due:      0.00
              without receipt.        Change:          0.00
          This Quote is VALID for
       14 DAYS from the Date above.
```

**EXHIBIT "D"**

# FAST WELDING & QUALITY STEEL

342 JEAN ST
SAN ANTONIO TX 78207
FAX 210-271-9189 CELL 210-707-5352
E.MAIL  fastweldingandqs@yahoo.com
Fast welding . com
7-17-14

## invoice.

CUSTOMERS NAME: J & R  MAHAL GROCERY
ADDRESS: 1015 N.  SABINAS
CITY  SAN ANTONIO     TX
WORK AT. SAME    SAME

### DESCRIPTION OF WORK

4  STEEL BENCH FRAMES

( ) Hand Rail          ( ) Fence          ( ) Gates
( ) Balcony Rail       ( ) Stair Railing  ( ) Wood Fence
( ) Powder Coat        ( ) Regular Painting   ( ) Curved Stair Rail

1 SLIDING FRONT DOOR  7 FT  HIGH  X 6  FT  LONG  BOLTD ON WALL
EXPANDED METAL SCREEN  ATTACH ON PAINTED  BLACK
MATERIALS  &  LABOR   INSTALLED

TOTAL ——————————$ 2,500.00

EXHIBIT "D"

# FAST WELDING & QUALITY STEEL

342 JEAN ST
SAN ANTONIO TX 78207
FAX 210-271-9189 CELL 210-707-5352
E.MAIL fastweldingandqs@yahoo.com
Fast welding . com
7-26-14

## BID.

CUSTOMERS NAME: J.&.R Mahal Grocery
ADDRESS: 1015 N Sabinas
CITY  SAN ANTONIO     TX 78207
WORK AT. same

### DESCRIPTION OF WORK
1 front entry double door  aluminum & plastic glass

( ) Hand Rail          ( ) Fence            ( ) Gates
( ) Balcony Rail       ( ) Stair Railing    ( ) Wood Fence
( ) Powder Coat        ( ) Regular Painting ( ) Curved Stair Rail

1 double door 5 ft wide x 82 in high standard height all aluminum
 & plastic glass ¼ thick silver color
Door cost & install ————————————————————$ 3,506,75

EXHIBIT "D"

Nationwide Insurance
Allied Insurance
Nationwide Agribusiness
Titan Insurance
Victoria Insurance

Nationwide
On Your Side®

Hannah Enterprise Inc - Dba J&R Mahal Grocery
Page 1 of 2

Hannah Enterprise Inc - Dba J&R Mahal Grocery
1015 N Sabinas St
San Antonio, TX 78207

**Date prepared**   July 17, 2014
**Claim number**   78 42 PE 105745 07112014 51

**Questions?**   Contact Claims Associate
Lindi Greve
grevel@nationwide.com
Phone  (515)508-5283

**Additional information
is needed to resolve
your claim**

Dear Mr. Shalakhti,

We recently received your commercial claim involving theft on 7/11/2014. To help
us resolve your claim as quickly as possible, please follow the steps outlined
below. **If repairs need to be made, please make temporary repairs now to
protect your property.**

**Claim details**

Insurer:            Nationwide Mutual Fire Insurance Company
Policyholder:   Hannah Enterprise Inc - Dba J&R Mahal Grocery
Claimant:         N/A
Claim number:  78 42 PE 105745 07112014 51
Loss date:        07-11-2014

**What you need to do**

Please complete and return the following enclosed forms to me by mail at One
Nationwide Gateway Dept. 5574 Des Moines, IA  50391-5574 by September 17,
2014:

- **Sworn Statement in Proof of Loss –** This is your legal claim stating all
  information you've provided to us about your loss is, to your knowledge,
  accurate; please sign it in the presence of a Notary Public

- **Authorization form –** To conduct our evaluation, we may need to review
  various kinds of information; this form allows us to contact banks, credit
  bureaus, utility companies and other institutions to request information about
  you; this authorization can only be used to evaluate this claim

- **Contents Loss Inventory form –** This document identifies specific items for
  which you're making your claim; along with this form, please attach proof of
  purchase or ownership for each item (original receipts, canceled checks,
  charge slips, warranty paperwork, owner's manuals, appraisals or
  photographs, etc.)

**EXHIBIT "D"**

## SWORN STATEMENT IN PROOF OF LOSS

Amount of Policy at time of loss: $72,100 (contents) $10,000 (Money) Policy Number: ACP BPRF5563342985
Inception Date: 4/3/14                                    Expiration Date: 4/3/15
Claim Number: 78 42 PE 105745 07112014 51            Agent: PAT PANTUSA
To the: Nationwide Mutual Fire Insurance Company

At time of loss, by the above indicated policy of insurance you insured Hannah Enterprise Inc - Dba J&R Mahal Grocery against loss by <u>theft</u>, to the property described under Schedule "A", according to the terms and conditions of the said policy and all forms, endorsements, transfers, and assignments attached thereto. *approximately*

1. **Time and Origin:** A _Blenkin_ loss occurred about _3 AM_ on _7-11-14_.
   The cause and origin of said loss were:                        (time)         (date)

2. **Occupancy:** The building described, or containing the property described, was occupied at the time of loss as follows, and for no other purpose whatever: _Convenience     Store_

3. **Title and Interest:** At the time of the loss the interest of your insured in the property described therein was _personal_ . No other person or persons had any interest therein or incumbencies except:

4. **Changes:** Since the said policy was issued there has been no assignment thereof, or changes of interest, use, occupancy, possession, or exposure of the property described, except: _None_

5. **Total Insurance:** The total amount of insurance upon the property described by this policy was, at the time of loss, $ _72,100_ , as more particularly specified in the apportionment attached under Schedule "C", besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

6. **Actual Cash Value** of said property at the time of loss,                   $ _73,000_
7. **The Whole Loss and Damage was**                                          $ _8819 Cash c Thet 16/186.86_
8. **Less Amount of Deductible or Coinsurance Penalty**                        $ _2500_
9. **The Amount Claimed** under the above numbered policy is                   $ _22,505.86_

The said loss did not originate by any act, design, or procurement on the part of your insured or its affiliates. Any other information that may be required will be furnished and considered a part of this proof.

In consideration of any payment made pursuant to this proof the undersigned hereby assigns and transfers to the Company named above and agrees that said Company is subrogated to each and all claims and demands against any persons, firms or corporations arising from or connected with such loss or damages to the extent of such payments. The undersigned agrees that he will assist the Company on the prosecution of such claims and will execute any and all papers necessary in effecting recovery.

The furnishing of this blank or the preparation of the above by a representative of the above insurance company is not a waiver of any rights.

_____              _____
SIGNATURE OF INSURED                          SIGNATURE OF INSURED

On this _2nd_ day of _August_ , 20 _14_ , Before me personally appeared
_Hanna A. Shalakhti_ to me known to be the person described herein, and who executed the foregoing
instrument and _n/a_ acknowledged that _Hanna A Shalakhti_ voluntarily
executed the same.

My term expires _11/28_ , 20 _15_   _Malcolm E Thom___
                                              NOTARY PUBLIC

MALCOLM E THOMAS JR
My Commission Expires
November 28, 2015

**EXHIBIT "D"**

### SCHEDULE "A" – POLICY FORM

Policy Form No. _____ Dated _____
Item 1.  $ _____ on _____
Item 2.  $ _____ on _____
Item 3.  $ _____ on _____
Item 4.  $ _____ on _____
Situated: _____
Coinsurance, Average, Distribution, or Deductible Clauses, if any

_____
_____

Loss, if any, Payable to
_____
_____

### SCHEDULE "B"
### STATEMENT OF ACTUAL CASH VALUE AND LOSS DAMAGE

| | | ACTUAL CASH VALUE | LOSS AND DAMAGE |
|---|---|---|---|
| | Cash in Safe & Different locations | | 8 819 00 |
| | Stolen Merchandise | | 8394 00 |
| | Door Damage | | 6149 85 |
| | Cash Register Broken | | 784 81 |
| | Lap Top Stolen | | 358 30 |
| Totals: | | | 25005 96 |

### SCHEDULE "C" – APPORTIONMENT

| POLICY NO. | EXPIRES | COMPANY NAME | ITEM NO. | | ITEM NO. | |
|---|---|---|---|---|---|---|
| | | | INSURES | PAYS | INSURES | PAYS |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Totals: | | | | | | |

**EXHIBIT "D"**

**CONTENTS LOSS INVENTORY**

| # | No. of Items | Item Description: Model No., Serial No., Brand, etc. | PLACE OF PURCHASE & PURCHASE DATE (mo/yr) | ORIGINAL COST | REPLACEMENT COST | REPAIR COST |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |

CLAIM NUMBER: 78 42 PE 105745 07112014 51

INSURED'S SIGNATURE: _____   Page No. _____ of _____

INSURED'S SIGNATURE (SPOUSE): _____

**NOTE:** If you have more damaged items than this form allows, photostatic copies of this form are permitted.

**EXHIBIT "D"**

## AUTHORIZATION

I/We, Hannah Enterprise Inc - Dba J&R Mahal Grocery, residing at 1015 N Sabinas St San Antonio, TX  78207  and doing business at   hereby authorize banks, savings institutions, credit agencies, insurers, credit bureaus, electric companies, telephone companies, gas companies, mortgage companies, or any other creditors to whom a signed or photocopy of this authorization is delivered, to release to Nationwide Mutual Fire Insurance Company, any and all information regarding my/our banking transactions, mortgages, credit accounts, insurance policies, and claims history related to same, utilities service status and payment history, and other financial transactions.

I/We hereby release said banks, savings institutions, credit bureaus, insurers, utilities and other creditors from any and all responsibility and liability for having disclosed said information.  A copy of this release will serve as an original.

*7-24 -14   11:15 AM*
DATE AND TIME

*Hanna sholakhti*
INSURED

*421 59 1342*
SOCIAL SECURITY NUMBER

*6-26-76*
DATE OF BIRTH

*15855 Marisa pl*
STREET ADDRESS

*San antoin TX 78247*
CITY   STATE   ZIP

*210 9989288*
AREA CODE - HOME PHONE NUMBER

*210 212 9347*
AREA CODE - WORK PHONE NUMBER

_____
SIGNATURE

INSURED

SOCIAL SECURITY NUMBER

DATE OF BIRTH

STREET ADDRESS

CITY   STATE   ZIP

AREA CODE - HOME PHONE NUMBER

AREA CODE - WORK PHONE NUMBER

SIGNATURE

**EXHIBIT "D"**

```
WELCOME TO BEST BUY #201
   SAN ANTONIO, TX 78216
       (888)229-3770

     Keep your receipt!
```

Val #:0000 694219-707408-788551-014940-204

0201 064 8122 02/23/14  13:01 01033301

_____   D u p l i c a t e   R e c e i p t
        * * * * * * * * * * * * * * * * *

```
2032016   C55-A5310                  330.99
   C55-A5310-15.6"/I3-3120M/6GB/
   20.00 CLEARANCE
   49.00 OPEN ITEM DISCOUNT
   ITEM TAX 27.3
   LP#: 200001794948199
1689012   KAS018800F0            0.00
   KASPERSKY IS BOX 2014
   2.99 DISCOUNT
5871467   KASPERSKY I            0.00
   KASPERSKY IS 3 USER 6 MONTH
   27.00 DISCOUNT
5426693   MY BEST BUY            0.00 N
   MY BEST BUY
   MEMBER ID 1026182718

                  SUBTOTAL       330.99
          SALES TAX AMOUNT        27.31
                                =========
                     TOTAL       358.30

Associate # 1033301

xxxxxxxxxxx8052 BBY CARD         358.30
HANNA SHALAKHTI A
APPROVAL 02 3R
6 Month Financing(No Rewards)

6 Month Financing
No interest if paid in full within
6 months. If the deferred interest balance
is not paid in full by the end of the
promotional period, interest will be
charged from the purchase date at rates
otherwise applicable under your
Card Agreement. Minimum payments required.
See Card Agreement for details.

OTHER SAVINGS        98.99
TOTAL SAVINGS        98.99

HANNA S
```

**EXHIBIT "D"**

**Nationwide®**
*On Your Side™*

NATIONWIDE MUTUAL FIRE INS CO
ONE NATIONWIDE PLAZA
COLUMBUS, OH 43215-2220

42   86761
RENEWAL

# PREMIER BUSINESSOWNERS POLICY

### PREMIER RETAIL

### COMMON DECLARATIONS

Policy Number: ACP    BPRF   5563342985

Named Insured: HANNAH ENTERPRISE INC - DBA
J&R MAHAL GROCERY

Mailing Address: 1015 N SABINAS ST
SAN ANTONIO, TX   78207-1613

Agency: PAT PANTUSA
Address: SAN ANTONIO TX   78247-1943
Agency Phone Number: (210)599-4555

Policy Period: Effective From 04-03-14   To 04-03-15
12:01 AM Standard Time at your principal place of business.

| | |
|---|---|
| Form of your business entity: CORPORATION | |
| Description of your business: CONVENIENCE STORE | |

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

**CONTINUATION PROVISION:** If we offer to continue your coverage and you or your representative do not accept,
this policy will automatically terminate on the expiration date of the current policy period stated above.  Failure to
pay the required premium when due shall mean that you have not accepted our offer to continue your coverage.
This policy will terminate sooner if any portion of the current policy period premium is not paid when due.

**RENEWAL POLICY NOTICE:** In an effort to keep insurance premiums as low as possible, we have streamlined
your renewal policy by not including printed copies of policy forms or endorsements that have not changed from
your expiring policies, unless they include variable information that is unique to you.  Refer to your prior policies for
printed copies of these forms.  If you have a need for any form, they are available by request from your agent.

TOTAL POLICY PREMIUM $      2,088.00

| Previous Policy Number | STATUS | I | |
|---|---|---|---|
| ACP    BPRF   5553342985 | ENTRY DATE | 02-07-14 | Countersignature          Date |

These Common Policy Declarations, together with the Common Policy Conditions, Coverage Form Declarations,
Coverage Forms and any endorsements issued to form a part thereof, complete the Policy numbered above.

# PREMIER BUSINESSOWNERS POLICY

**PREMIER RETAIL**

### SCHEDULE OF NAMED INSUREDS

| | | | Policy Period: |
|---|---|---|---|
| Policy Number: ACP   BPRF   5563342985 | | From 04-03-14 | To 04-03-15 |

Named Insured:

**HANNAH ENTERPRISE INC - DBA**
**J&R MAHAL GROCERY**

PB 81 00 (01-01)

Page 2 of 2
EXHIBIT "E"
55   06625

# NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
# MUTUAL COMPANY CONDITIONS ENDORSEMENT

## POLICYHOLDER MEMBERSHIP IN THE COMPANY

(Applicable Only to Policies Issued by Nationwide Mutual Fire Insurance Company in States Other than the State of Texas)

Because this policy is issued by Nationwide Mutual Fire Insurance Company (the "Company"), the first named insured listed on the declarations page ("named insured") is a member of the Company issuing the policy while this or any other policy issued by the Company is in force. While a member, the named insured is entitled to one vote only – regardless of the number of policies issued to the named insured – either in person or by proxy at meetings of members of the Company.

The annual meeting of members of the Company will be held each year at the Home Office of the Company in Columbus, Ohio, at 9:30 a.m. on the first Thursday of April. If the Board of Directors of Nationwide Mutual Fire Insurance Company should elect to change the time or place of that meeting, the Company will mail notice of the change to the member's last known address. The Company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning that the named insured is not subject to any assessment beyond the premiums required for each policy term.

## POLICYHOLDER DIVIDEND PROVISIONS

The named insured is entitled to any Dividends which are declared by the Board of Directors of the Company in accordance with law and which are applicable to coverages provided in this policy.

## POLICYHOLDER MEMBERSHIP IN THE COMPANY IN TEXAS

(Applicable Only to Policies Issued by Nationwide Mutual Fire Insurance Company in the State of Texas)

**1. MUTUALS – MEMBERSHIP AND VOTING NOTICE.** The named insured is notified that, by virtue of this policy, the named insured is a member of the Nationwide Mutual Fire Insurance Company of Columbus, Ohio, (the "Company") and is entitled, as is lawfully provided in the charter, constitution, and by-laws to vote either in person or by proxy in any or all meetings of said Company. Each member is entitled to only one vote regardless of the number of policies owned. The annual meetings of the members of the Company are held in the Home Office, at Columbus, Ohio, on the first Thursday of April, in each year, at 9:30 o'clock a.m.

**2. MUTUALS – PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY**. No Contingent Liability: This policy is non-assessable. The named insured is a member of the Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

IN WITNESS WHEREOF: Nationwide Mutual Fire Insurance Company has caused this policy to be signed by its President and Secretary, and countersigned by a duly authorized representative of the

Secretary

President
Nationwide Mutual Fire Insurance Company

EXHIBIT "E"

# PREMIER BUSINESSOWNERS POLICY

## PREMIER RETAIL
### PROPERTY DECLARATIONS

| | |
|---|---|
| Policy Number:  **ACP BPRF5563342985** | Policy Period:<br>From **04-03-14** To **04-03-15** |

| | |
|---|---|
| Description of Premises Number:  **001**     Building Number:  **001**     Construction:     **JOISTED MASONRY** | |
| Premises Address  **1015 N SABINAS ST**                    **SAN ANTONIO        TX         78207-1613** | |
| Occupancy   **T**     Classification:  **CONVENIENCE STORES - SALES OF BEER & WINE LESS THAN 25% OF** | |
|                                          **GROSS SALES - NO GAS PUMPS - NO  COOKING** | |
| Described as:  **CONVENIENCE STORE** | |

WE PROVIDE INSURANCE ONLY FOR THOSE COVERAGES INDICATED BY A LIMIT OR BY "INCLUDED".

The Property Coverage provided at this premises is subject to a  **$ 2,500** Deductible, unless otherwise stated.

| COVERAGES | LIMITS OF INSURANCE |
|---|---|
| Building - | **NOT  PROVIDED** |
| Business Personal Property - Replacement cost | **$72,100** |

**ADDITIONAL COVERAGES - the Coverage Form Includes other Additional Coverages not shown.**

| | |
|---|---|
| Business Income - ALS - 12 Months - NO Hour Waiting Period - 60 Day Ordinary Payroll Limit | **INCLUDED** |
| Extra Expense - Actual Loss Sustained (ALS) - 12 Months - NO Hour Waiting Period | **INCLUDED** |
| Equipment Breakdown | **INCLUDED** |
| Automatic Increase in Insurance - Building | **2%** |
| Automatic Increase in Insurance - Business Personal Property | **2.9%** |
| Back Up of Sewer and Drain Water (limit shown per Building, subject to $25,000  policy aggregate) | **$5,000** |

| OPTIONAL INCREASED LIMITS | Included Limit | Additional Limit |
|---|---|---|
| Account Receivable | $25,000 | **$25,000** |
| Valuable Papers and Records (At the Described Premises) | $25,000 | **$25,000** |
| Forgery and Alteration | $10,000 | **$10,000** |
| Money and Securities - Inside the Premises | $10,000 | **$10,000** |
| Outside the Premises (Limited) | $10,000 | **$10,000** |
| Outdoor Signs | $2,500 | **$2,500** |
| Outdoor Trees, Shrubs, Plants and Lawns | $10,000 | **$10,000** |
| Business Personal Property Away From Premises | $15,000 | **$15,000** |
| Business Personal Property Away From Premises - Transit | $15,000 | **$15,000** |
| Electronic Data | $10,000 | **$10,000** |
| Interruption of Computer Operations | $10,000 | **$10,000** |
| Building Property of Others | $10,000 | **$10,000** |

**OPTIONAL COVERAGES - Other frequently purchased coverage options.**

| | |
|---|---|
| Employee Dishonesty | **NOT  PROVIDED** |
| Ordinance or Law - 1 - Loss to Undamaged Portion | **NOT  PROVIDED** |
| 2 - Demolition Cost and Broadened Increased Cost of Construction | **NOT  PROVIDED** |
| Ordinance or Law Broadened | **NOT  PROVIDED** |

**PROTECTIVE SAFEGUARDS**
This premise has Protective Safeguards identified by symbols below.  Insurance for Fire or Burglary and Robbery at this premise will be excluded if you do not notify us immediately if any of these safeguards are impaired.
See PB 04 30 for a description of each symbol. APPLICABLE SYMBOLS:  **P-6 ;**

EXHIBIT "E"

# PREMIER BUSINESSOWNERS POLICY

**PREMIER RETAIL**

**MORTGAGEE ASSIGNMENT INFORMATION**

Policy Number:   **ACP BPRF5563342985**

Policy Period:
From **04-03-14** To **04-03-15**

Additional Interest:                  Interest Number:               Loan Number:
Interest:

Additional Interest:                  Interest Number:               Loan Number:
Interest:

Additional Interest:                  Interest Number:               Loan Number:
Interest:

Additional Interest:                  Interest Number:               Loan Number:
Interest:

Additional Interest:                  Interest Number:               Loan Number:
Interest:

Additional Interest:                  Interest Number:               Loan Number:
Interest:

Additional Interest:                  Interest Number:               Loan Number:
Interest:

Additional Interest:                  Interest Number:               Loan Number:
Interest:

Additional Interest:                  Interest Number:               Loan Number:
Interest:

Additional Interest:                  Interest Number:               Loan Number:
Interest:

**EXHIBIT "E"**

DIRECT BILL      LD5S            MLF         AGENT COPY                    UID      50        55   06628

# PREMIER BUSINESSOWNERS POLICY
### PREMIER RETAIL
## LIABILITY DECLARATIONS

Policy Period:

**Policy Number:  ACP  BPRF 5563342985**          From **04-03-14**  To **04-03-15**

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit of Insurance | Per Occurrence | **$1,000,000** |
| Medical Payments Coverage Sub Limit | Per Person | **$1,000** |
| Tenants Property Damage Legal Liability Sub Limit | Per Covered Loss | **$300,000** |
| Personal and Advertising Injury | Per Person Or Organization | **$1,000,000** |
| Products – Completed Operations Aggregate | All Occurrences | **$2,000,000** |
| General Aggregate | All Occurrences | **$2,000,000** |
| (Other than Products – Completed Operations) | | |

## AUTOMATIC ADDITIONAL INSUREDS STATUS

The following persons or organizations are automatically insureds when you and they have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy.

Co-Owners of Insured Premises
Controlling Interest
Grantor of Franchise or License
Lessors of Leased Equipment
Managers or Lessors of Leased Premises
Mortgagee, Assignee or Receiver
Owners or Other Interest from Whom Land has been Leased
State or Political Subdivisions - Permits Relating to Premises

## PROPERTY DAMAGE DEDUCTIBLE
NONE

## OPTIONAL COVERAGES

Liquor Liability                                    **Included in Each Occurrence Limit of Insurance Subject to Products - Completed Operations Aggregate**

**EXHIBIT "E"**

# PREMIER BUSINESSOWNERS POLICY

### PREMIER RETAIL

## FORMS AND ENDORSEMENTS SUMMARY

Policy Number:  **ACP**  BPRF 5563342985

Policy Period:
From **04-03-14**  To **04-03-15**

| FORM NUMBER | | TITLE |
|---|---|---|
| LI0021 | 0101 | NUCLEAR ENERGY LIABILITY EXCLUSION |
| PB0002 | 0411 | PREMIER BUSINESSOWNERS PROPERTY COVERAGE |
| PB0006 | 0411 | PREMIER BUSINESSOWNERS LIABILITY COVERAG |
| PB0009 | 0411 | PREMIER BUSINESSOWNERS COMMON POLICY CON |
| PB0412 | 0101 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES |
| PB0430 | 0411 | PROTECTIVE SAFEGUARDS |
| PB2998 | 0908 | EXCLUSION - VIOLATION OF CONSUMER PROTEC |
| PB2999 | 0411 | EXCLUSION - FUNGI OR BACTERIA |
| PB9042 | 1113 | TEXAS AMENDATORY ENDORSEMENT |
| PB6303 | 0101 | LIQUOR LIABILITY COVERAGE |
| PB0534 | 0108 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM; EXCLUSION - |
| PB0564 | 0108 | CONDITIONAL EXCLUSION OF TERRORISM - EXCLUSION OF WAR |

### IMPORTANT NOTICES

| | | |
|---|---|---|
| IN7158 | 0707 | IMPORTANT NOTICE |
| IN7159 | 0706 | TEXAS DISCLOSURE FORM |
| IN7590 | 1011 | DATA BREACH RESOLUTION SERVICES |
| IN7592 | 1011 | LIFESTAGES IDENTITY MANAGEMENT AND RESOLUTION SERVICES |
| IN7729 | 0613 | TEXAS PERIOD TO FILE A CLAIM OR BRING LEGAL ACTION AGAINST U |
| IN7291 | 0114 | POTENTIAL RESTRICTIONS OF TERRORISM COVERAGE |

PB 81 03 (06-12)

55   06630

EXHIBIT "E"

# PREMIER BUSINESSOWNERS POLICY

### PREMIER RETAIL
### AGENT PREMIUM SUMMARY

Policy Number:  **ACP  BPRF 5563342985**

Policy Period:
From **04-03-14** To **04-03-15**

| Loc /Bldg | Coverage | Limits | Premium |
|---|---|---|---|
| | POLICY WIDE OPTIONAL COVERAGES | | |
| | NONE | | |
| 01 01 | PERSONAL PROPERTY | 72,100 | 1,044 |
| | EQUIPMENT BREAKDOWN | INCLUDED | 88 |
| | LIABILITY | 1,000,000 | 397 |
| | LIQUOR LIABILITY | INCLUDED | 559 |
| | BUILDING TOTAL PREMIUM | | 2,088 |

If an * is shown for a coverage, then the limit shown is the additional amount of insurance for that coverage - see the Declarations page for the total amount.

**PB 81 PS (01-01)**

EXHIBIT "E"

EFFECTIVE DATE: 12:01 AM Standard Time,
(at your principal place of business)

**BUSINESSOWNERS**
**PB AI 02 (01-01)**

# ACKNOWLEDGEMENT OF ADDITIONAL INSURED STATUS
# MANAGERS OR LESSORS OF LEASED PREMISES

**Person or Organization Designated as an Additional Insured:**

YOUSEF I RAFATI

PO BOX 760157
SAN ANTONIO         TX 78245

**Designated Premises (Part Leased to the Named Insured):**

1015 N SABINAS ST
SAN ANTONIO     TX 782071613

This form has been sent to you to acknowledge your status as an additional insured under our, meaning the issuing Company stated below, insurance policy issued to the Named Insured shown below.

Under our Premier Businessowners Liability Coverage Form, Section II. WHO IS AN INSURED provides as follows:

Any of the following persons or organizations are automatically insureds when you [i.e. the Named Insured stated below] and such person or organization have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy providing general liability coverage.

Managers or Lessors of Leased Premises

Any person or organization from whom you lease premises is an additional insured, but only with respect to their liability arising out of your use of that part of the premises leased to you, subject to the following additional exclusion:

This insurance, including any duty we have to defend "suits", does not apply to structural alterations, new construction or demolition operations performed by or for such person or organization.

HOWEVER, their status as additional insured under this policy ends when you cease to be a tenant of such premises.

The policy language set forth above is subject to all of the terms and conditions of the policy issued to the Named Insured shown below. For your information, our Named Insured, the Policy Number, Policy Term and Limits of Insurance are stated below.

Named Insured       **HANNAH ENTERPRISE INC - DBA**

| | |
|---|---|
| Issuing Company: | **NATIONWIDE FIRE INS COMPANY** |
| Policy Number: | **ACP BPRF5563342985** |
| Policy Term: | **04-03-14 To 04-03-15** |
| Limits of Insurance: | **Per Occurrence          $1,000,000** |
| | **All Occurrences        $2,000,000** |

**PB AI 02 (01-01)**

**Page 1 of 1**

**EXHIBIT "E"**

BUSINESSOWNERS
PB 04 30 04 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

PREMIER BUSINESSOWNERS PROPERTY COVERAGE FORM

**NOTICE**

**YOU RISK THE LOSS OF CERTAIN INSURANCE COVERAGE AT PREMISES DESIGNATED IN THE DECLARATIONS IF YOU FAIL TO MAINTAIN ANY OF THE APPLICABLE PROTECTIVE SAFEGUARDS, LISTED BY SYMBOL IN THE DECLARATIONS FOR EACH PREMISES.**

Our requirement that you maintain the protective safeguard is in consideration of a premium reduction. If you do not wish to commit to the requirements expressed in this endorsement, at our option, your insurance may be continued. However, the credit for such protection would not be applied.

Your acceptance of this policy in the payment of premium when due constitutes your understanding and acknowledgement that you risk the loss of certain insurance at the premises designated if you fail to maintain the protective safeguard and your acceptance and agreement with the terms of this endorsement.

**SCHEDULE**

**Prem. / Bldg. No.   Description of P-9 Protective Safeguard:**

A. **CONDITION.** As a condition of this insurance, you are required to maintain the applicable protective devices or services for fire, denoted by symbols P-1, P-2, P-3, P-4, P-5, P-8, or P-9; or for burglary and robbery, denoted by symbols P-6 or P-7), as designated at each premises by symbol in the Declarations.

B. **EXCLUSIONS.** Under Section B. EXCLUSIONS, the following exclusions are added:

1. **FIRE PROTECTIVE SAFEGUARDS**

   We will not pay for loss or damages caused by or resulting from fire if, prior to the fire, you:

   a. Knew or should have known of any suspension or impairment in any protective safeguard as designated at each premises by symbol in the Declarations and failed to notify us of that fact; or

   b. Failed to maintain any protective safeguard as designated at each premises by symbol in the Declarations and over which you have control, in complete working order; or

c. Add or modify any cooking equipment and operate it prior to adding or extending any Fire Suppression System that is required by code to protect it.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

2. **BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS**

   We will not pay for loss or damage caused by or resulting from theft if, prior to the theft, you:

   a. Knew or should have known of any suspension or impairment in any protective safeguard designated at each premises by symbol in the Declarations and failed to notify us of that fact; or

   b. Failed to maintain any protective safeguard designated at each premises by symbol in the Declarations and over which you had control, in complete working order.

**PB 04 30 04 11**          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **Page 1 of 2**

ACP BPRF5563342985                                    AGENT COPY                                    55      06633

**EXHIBIT "E"**

PB 04 30 04 11

C. **PROTECTIVE SAFEGUARD SYMBOLS.** The protective safeguards to which this endorsement applies are identified in the Declarations by the following symbols:

**"P-1"** **Automatic Sprinkler System**, including related supervisory services. Automatic Sprinkler System means:

   a. Any automatic fire protective or extinguishing system, including connected:

     1) Sprinklers and discharge nozzles;

     2) Ducts, pipes, valves and fittings;

     3) Tanks, their component parts and supports; and

     4) Pumps and private fire protection mains.

   b. When supplied from an automatic fire protective system:

     1) Nonautomatic fire protective systems; and

     2) Hydrants, standpipes and outlets.

**"P-2"** **Automatic Fire Alarm**, protecting the entire building, that is:

   a. Connected to a central station; or

   b. Reporting to a public or private fire alarm station.

**"P-3"** **Security Service**, with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4"** **Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5"** **Watchman Service** based on contract with a privately owned security company providing premises protection services to the described premises.

**"P-6"** **Local Burglar Alarm** protecting the entire building which in the event of an unauthorized or attempted entry at the described premises, triggers a loud sounding gong or siren, or a visual device, on the outside of the building.

**"P-7"** **Central Station Burglar Alarm** protecting the entire building which, in the event of an unauthorized or attempted entry at the described premises, will automatically transmit an alarm signal to an outside Central Station or police station.

**"P-8"** **Fire Suppression System**, including related supervisory services. Fire Suppression System means any automatic fire protective or extinguishing system designed to protect cooking equipment (i.e. cooking surfaces, deep fat fryers, grease ducts and hoods) including connected:

   a. Sprinklers and discharge nozzles;

   b. Ducts, pipes, valves and fittings; and

   c. Tanks, their component parts and supports.

**"P-9"** The protective system described in the Schedule of this endorsement.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ACP BPRF5563342985

AGENT COPY

55     06634

EXHIBIT "E"

**Nationwide Insurance**
**Allied Insurance**
**Nationwide Agribusiness**
**Titan Insurance**
*Nationwide®*
*On Your Side®*   **Victoria Insurance**

Hannah Enterprise Inc - DBA J&R Mahal
Grocery

Hannah Enterprise Inc
Dba J&R Mahal Grocery
1015 N Sabinas St
San Antonio, TX 78207

| | |
|---|---|
| **Date prepared** | February 13, 2015 |
| **Claim number** | 78 42 PE 105745 |
| | 07112014 51 |
| | |
| **Questions?** | Contact Claims Associate |
| | Justin Murnane |
| | murnanj4@nationwide.com |
| | Phone 1-(800)200-0518 |
| | Ext. 1637 |

## Claim details

Insurer:         Nationwide Mutual Fire Insurance Company
Policyholder:    Hannah Enterprise Inc - DBA J&R Mahal Grocery
Claimant:
Claim number:  78 42 PE 105745 07112014 51
Loss date:       07-11-2014
Loss location:   1015 N SABINAS S SAN ANTONIO, TX 78207

Dear Shalakhti Hanna,

We have completed our investigation and have determined a portion of your burglary claim is covered under your policy.  Your policy covers damages to the exterior building glass that you are contractually responsible for, however there is no coverage for the stolen money, business personal property, and damages to the security gates.

POLICY DETAILS

Your Premier Businessowners Property Coverage Form PB 0002 0411 states the following:

A. COVERAGES (Page 2 of 39)

   We will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss.

   1. COVERED PROPERTY

      Covered Property includes Buildings as described under paragraph a. below, Business Personal Property as described under paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under paragraph 2, PROPERTY NOT COVERED.

      b. Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 1,000 feet of the described premises, consisting of the following:

         (1) Personal property you own that is used in your business, including but not limited to furniture, fixtures, machinery, equipment and "stock";

         (2) Personal property of others that is in your care, custody or control, except as otherwise provided in Condition 5. Loss Payment under Section E. PROPERTY LOSS CONDITIONS;

**EXHIBIT "F"**



**Nationwide Insurance**
**Allied Insurance**
**Nationwide Agribusiness**
**Titan Insurance**
**Victoria Insurance**

(3) Tenant improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

    (a) Made a part of the building or structure you occupy but do not own; and

    (b) You acquired or made at your expense but cannot legally remove; and

(4) Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under paragraph (2) personal property of others above.

(5) Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control and you must be contractually obligated to repair or replace it. We will also pay for necessary repair or replacement of encasing frames.

Additionally your policy includes the PB 0430 0411 Protective Safeguard Endorsement, which states the following:

A. CONDITION. (Page 1 of 2)
As a condition of this insurance, you are required to maintain the applicable protective devices or services for fire, denoted by symbols P-1, P-2, P-3, P-4, P-5, P-8, or P-9; or for burglary and robbery, denoted by symbols P-6 or P-7), as designated at each premises by symbol in the Declarations.

B. Exclusions.  Under Section B. EXCLUSIONS, the following exclusions are added:

2. BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS
We will not pay for loss or damage caused by or resulting from theft if, prior to the theft, you:

    a. Knew or should have known of any suspension or impairment in any protective safeguard designated at each premises by symbol in the Declarations and failed to notify us of that fact; or

    b. Failed to maintain any protective safeguard designated at each premises by symbol in the Declarations and over which you had control, in complete working order.

A review of your policy Declarations discloses that symbol P-6 was designated as a Protective Safeguard.

C. PROTECTIVE SAFEGUARD SYMBOLS. (Page 2 of 2)
The protective safeguards to which this endorsement applies are identified in the Declarations by the following symbols:

"P-6 Local Burglar Alarm protecting the entire building which in the event of an unauthorized or attempted entry at the described premises, triggers a loud sounding gong or siren, or a visual device on the outside of the building.

ABOUT OUR DECISION

Our review showed that on July 11, 2014 your business was broken into.  You advised that the source of forced entry was by damaging the outside security gates and breaking the plexiglass inside the storefront door.  Once inside you advised that they stolen money, tobacco products, clothing, and a laptop.  It was confirmed with Stephanie Stratton at ASG Security that the security alarm protecting the building was not set the night of the loss.  As per the policy language above, we will not pay for loss or damage caused by or resulting from theft if, prior to the theft you failed to maintain the protective safeguard described on your declarations.  By not setting the alarm, you failed to maintain the burglar alarm.  For this reason coverage for your loss is not afforded and we must respectfully deny your claim.

We will however, pay for damages to the building that you are contractually responsible for that occurred from the forced entry to gain access to the interior of the building.  A review of your lease agreement under

**EXHIBIT "F"**



**Nationwide Insurance**
**Allied Insurance**
**Nationwide Agribusiness**
**Titan Insurance**
**Victoria Insurance**

the Insurance section states that you the Lessee, at your expense, shall maintain insurance for plate glass. For this reason we will pay for the damages to the glass, we will however not pay for the damages to the security gates as per your lease agreement you are not contractually responsible.

We expressly reserve all other rights, defenses, or contentions, which are available to us under the policy of insurance, by law or otherwise, and do not waive any such rights or defenses which we now have or which may become known to us in the future.

If you have information about this claim that may affect our current decision – please forward it to us as soon as possible.

Thank you for choosing us for your important insurance protection. If you have any questions or concerns, please contact me at 614-948-1637 or murnanj4@nationwide.com.

Sincerely,

Justin Murnane
Nationwide Mutual Fire Insurance Company
One Nationwide Gateway Dept 5572
Des Moines, IA  50391-5572
*

**EXHIBIT "F"**

CAUSE NUMBER __2016CV03123__

| | | |
|---|---|---|
| HANNA SHALAKHTI | § | IN THE COUNTY COURT |
| VS. | | |
| | § | AT LAW N0. __CC# 03__ |
| NATIONWIDE MUTUAL FIRE INSURANCE CO. AND ALARM SECURITY GROUP, LLC. D/B/A | | |
| ASG SECURITY | § | BEXAR COUNTY, TEXAS |

<u>PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>

TO:    Alarm Security Group, LLC, one of the Defendants herein

Pursuant to Rules the Texas Rules of Civil Procedure Hanna Shalakhti requires you to:

1.    Answer in complete detail and in writing each of the enclosed Interrogatories;
2.    Sign your name to you response to the Interrogatories;
3.    Swear to the truth of your answers to the Interrogatories before a Notary Public or other Judicial Officer;
4.    Deliver a complete copy of your answers to the undersigned within thirty (30) days of your receipt hereof, and file the signed and notarized original with the Clerk of the Court within the above specified thirty (30) days.

<u>DEFINITIONS</u>

As used herein, the following terms shall have the meanings indicated below:

1.    "Document" means any printed, typewritten, handwritten, mechanically or otherwise recorded matter of whatever character, including, but without limitation, letters, purchase orders, memoranda, telegrams, notes, catalogues, brochures, diaries, reports, calendars, inter- or intra-office communications, statements, investigative reports, announcements, depositions, Answers To Interrogatories, Pleadings, Judgments, Newspaper articles, and carbon or photographic copies of any such material if you do not have custody or control of the original.  If any such document requested to be identified was but is no longer in your possession or control, or is no longer in existence, please state whether it is:
    a.    Missing or lost;
    b.    Destroyed;
    c.    Transferred, voluntarily or involuntarily, to, and if so, to whom; or
    d.    Otherwise disposed of, and in each instance explain the circumstances surrounding the authorization for disposition thereof, state the approximate date thereof, and describe its contents.
2.    "Possession, Custody, or Control" includes constructive possession whereby you have a right to compel the production of a matter, or to compel entrance from a third party.
3.    "Expert" means an expert witness who is expected to testify during trial of this cause, as well as an expert used for consultation and who is not expected to be called as a witness during trial, but whose work product will form a basis, either in whole or in part, of the opinion of an expert who is to be called as a witness.

4.    "Report" means the mental impressions and opinions held by an expert and the facts known to the expert regardless of when the factual information was acquired which relates to or form the basis of mental impressions and opinions held by the expert.  A report includes documents and tangible reports, physical models, compilations of data and other material prepared by an expert, or for an expert in anticipation of the expert's deposition, or trial testimony, and further includes all tangible reports, physical models, compilation of data and other material prepared by an expert used for consultation regardless whether it was prepared in anticipation of litigation or trial, when such expert's report forms a basis either in whole or in part of the opinions of an expert who is to be called as a witness.

5.    "You and Your" mean the responding party to whom these questions are directed, as well as agents, employees, attorneys, investigators, and all other persons acting for that party.

6.    "Persons" mean natural person, corporations, partnerships, and all other entities.

In each question wherein you are asked to identify a document, state with respect to each such document, if a copy of it is not attached to your answers, the following:

1.    The identity of the person who signed it or over whose name it was issued;

2.    The identity of the person who prepared it;

3.    The identity of the person or persons to whom it was addressed;

4.    The title and substance of the document with sufficient particularly to enable same to be identified.

5.    The date of the document;

6.    The date the document was executed or prepared, if different from the date it bears; and

7.    If the document or a copy of it is not in your possession, custody, or control, the identity of the person who has control or custody of it, or a copy of it.

In each question wherein you are asked to identity a person, state the following with respect to such person:

1.    His full name;

2.    His last known address and telephone number;

3.    The name and address of his last known employer; and

4.    His job title.

If the person to be identified is not a natural person, e.g., a corporation, give its name, address, and principal place of business.

If you object to attaching copies of requested documents to your answers, or if you object to identifying any person as hereinabove defined, or if you feel that a Court Order should be obtained by this party, please so state in your answers to Interrogatories.

INTERROGATORY N0. 1:

If you denied that the agreement attached to the accompanying Request for Admissions as Exhibit "G" represents the agreement between you and the Plaintiff that was in effect at the time of the burglary provide the date and content of the agreement that was in effect and specify whether it was written or oral.

ANSWER:

INTERROGATORY N0. 2:

Give the dates you repaired the alarm system at the location since June 01, 2013, and describe the malfunction (including the zone) during each repair and the work that done.

ANSWER:

INTERROGATORY N0. 3:

Identify each complaint request for repairs that were made by the Plaintiff on the alarm system since June 01, 2013.
ANSWER:

INTERROGATORY N0. 4:

If you denied that the attachment to the accompanying Request for Admissions as Exhibit "C" correctly shows the alarm activity at the location on the dates and times described in that exhibit give the correct alarm activity and specify the reasons you claim that Exhibit "C" is inaccurate.

ANSWER:

INTERROGATORY N0. 5:

Was the alarm set at the location at the time of the burglary, and did you receive notice that the alarm was tripped (notice of a possible intrusion).

ANSWER:

INTERROGATORY N0. 6:

Identify each person you called when you received notice of the alarm being tripped (or notice of a possible intrusion), the person who received the notice and the person who called, and the date and time each call was made.

ANSWER:

INTERROGATORY N0. 7:

With respect to your answer to the foregoing Interrogatory identify the person(s) who made the call(s) and their position with you at the time and today.

ANSWER:

INTERROGATORY N0. 8:

If no call was made to alert anyone that a notice of an alarm being tripped took place give the reasons such a call (or calls) was (were) not made.

ANSWER:

INTERROGATORY N0. 9:

Identify all zones that were tripped on the date the burglary took place after the location was armed after the closing of the business day.

ANSWER:

INTERROGATORY N0. 10:

Do you normally keep a video or audio recording showing the conduct of your employee(s) who monitor locations and do you have access to the video or audio from the time the alarm was set after the closing of the store on the day before the burglary took place to a couple of hours after the burglary took place?

ANSWER:

INTERROGATORY N0. 11:

What is your understanding of the reason the system was flagged as on "test mode" on the day this burglary to the location took place.

ANSWER:

INTERROGATORY N0. 12:

Identify each of your employees that were informed/notified the reason(s) the alarm system was on "test mode" their position with you at the time of this burglary and today and the date and time they were given that information.

ANSWER:

INTERROGATORY N0. 13:

With respect to your answer to the preceding Interrogatory state what was told the them and the instructions they were given.

ANSWER:


INTERROGATORY N0. 14:

If you do not agree that had you called the police or the Plaintiff this burglary would have been thwarted give the reasons you disagree with that statement.

ANSWER:


INTERROGATORY N0. 15:

Give the time period the alarm was indicating an intrusion was taking place (from when to when) on the date of the burglary after the closing of the location and the arming of the alarm system.

ANSWER:


INTERROGATORY N0. 16:

Give your understanding of the manner the thief gained entrance to the property to commit the burglary and specify how you gained such knowledge and, if applicable, the documents on which you rely in support of your answer.

ANSWER:


INTERROGATORY N0. 17:

Identify each expert witness you have retained for consultation purposes only, who is not expected to testify in this case, but whose opinion, work-product, or expertise will be relied on by the testifying expert by giving his name, address, telephone number, his area of expertise, and the date or approximate date he was retained or consulted. If the answer is none, state that fact in your answer.

ANSWER:


INTERROGATORY N0. 18:

With respect to your answer to the preceding Interrogatory, state the knowledge/opinion held by each expert concerning all aspects of this lawsuit, and describe each report, memorandum, or other written document produced by, given to, and/or reviewed by each expert with respect to this case by giving the date, title, and author of each document. If the document is untitled, give a brief description of its content that is sufficient to identify it.

ANSWER:

INTERROGATORY N0. 19:

With respect to the expert witnesses identified in your answer to these Interrogatories and requests for disclosure, list each document exchanged (given or received) between/among any of the experts, by giving the date, title and author of each document.  If the document is untitled, give a brief description of its content sufficient to identify it.

ANSWER:

INTERROGATORY N0. 20:

With respect to each potential party to this lawsuit you have identified, state why you believe each of those persons is a potential party.

ANSWER:

INTERROGATORY N0. 21:

Pursuant to Rule 609(f), Texas Rules of Evidence, please state evidence of any conviction (by stating the offense, disposition, year of the offense, cause number, court, and county in which the offense occurred) which you intend to use at the trial of this matter regarding this Plaintiff or any witnesses identified as trial witnesses by this party.

ANSWER:

 

Respectfully submitted,

Charles Tabet
2600 McCullough Ave.
San Antonio, Texas 78212
(210) 572-7272 Telephone
(210) 572-7575 Facsimile


/s/ Charles Tabet
Attorney for Plaintiff
T. B. N0. 19601550

CAUSE NUMBER **2016CV03123**

| | | |
|---|---|---|
| HANNA SHALAKHTI | § | IN THE COUNTY COURT |
| VS. | | |
| | § | AT LAW N0. **CC# 03** |
| NATIONWIDE MUTUAL FIRE INSURANCE CO. AND ALARM SECURITY GROUP, LLC. D/B/A | | |
| ASG SECURITY | § | BEXAR COUNTY, TEXAS |

<u>PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>

TO:    Nationwide Mutual Fire Insurance Co., one of the Defendants herein

<u>INTERROGATORY N0. 1:</u>

Give the reasons you believe this incident does not constitute a covered incident under the insurance policy you issued.

ANSWER:


<u>INTERROGATORY N0. 2:</u>

If you deny that the insurance policy attached to the Original Petition as Exhibit "E" was in effect at the time of the burglary give the basis of you denying such a claim.

ANSWER:


<u>INTERROGATORY N0. 3:</u>

If you claim that Exhibit "F" does not accurately contain the reasons for you denying coverage of this claim specify all additional reasons for denying coverage.

ANSWER:


<u>INTERROGATORY N0. 4:</u>

Give the amount of coverage the Plaintiff would have been entitled to receive but for your denial of this claim as specified in your letter attached as Exhibit "F" to the Request for Admission.

ANSWER:


<u>INTERROGATORY N0. 5:</u>

What information do you rely on in claiming that the Plaintiff did not set, or engage the alarm system on the premises after he closed on the evening of the burglary.

ANSWER:

INTERROGATORY N0. 6:

With respect to your answer to the preceding Interrogatory identify each person on whom you rely in support of your answer.

ANSWER:

INTERROGATORY N0. 7:

Do you controvert the amount of loss the Plaintiff sustained in this burglary?

ANSWER:

INTERROGATORY N0. 8:

Do you controvert the Plaintiff lost the items (including the money) in the burglary?

ANSWER:

INTERROGATORY N0. 9:

If you controvert the amount Plaintiff lost in this burglary give the amount you believe Plaintiff actually lost and specify the documents/facts pm which you rely in support of your answer.

ANSWER:

INTERROGATORY N0. 10:

If you controvert the items (including money) Plaintiff lost in this burglary describe that were not lost and give the value of those items.

ANSWER:

INTERROGATORY N0. 11:

If you controverted an item or the value of an item Plaintiff listed as a loss give the date you initially controverted that claim, the date or approximate date you made it known to the Plaintiff

and the manner you made it known to the Plaintiff. If the answer is none state that fact in your answer.

ANSWER:

INTERROGATORY N0. 12:

Identify each person and each entity you interviewed and/or from whom you obtained information in investigating the validity of this claim, the date or approximate date of that interview, and the date or approximate date you obtained the documents.

ANSWER:

INTERROGATORY N0. 13:

Identify each person on whom you rely in claiming that the alarm system was not set (armed) on the day of the burglary.

ANSWER:

INTERROGATORY N0. 14:

If you disagree with the values provided by the Plaintiff for the loss he sustained as a result of the burglary provide the replacement value and specify the evidence on which you rely in support of your answer.

ANSWER:

INTERROGATORY N0. 15:

Give your understanding of the manner the thief gained entrance to the property to commit the burglary and specify the documents on which you rely in support of your answer.

ANSWER:

INTERROGATORY N0. 16:

Identify each expert witness you have retained for consultation purposes only, who is not expected to testify in this case, but whose opinion, work-product, or expertise will be relied on by the testifying expert by giving his name, address, telephone number, his area of expertise, and the date or approximate date he was retained or consulted. If the answer is none, state that fact in your answer.

ANSWER:

INTERROGATORY N0. 17:

With respect to your answer to the preceding Interrogatory, state the knowledge/opinion held by each expert concerning all aspects of this lawsuit, and describe each report, memorandum, or other written document produced by, given to, and/or reviewed by each expert with respect to this case by giving the date, title, and author of each document. If the document is untitled, give a brief description of its content that is sufficient to identify it.

ANSWER:


INTERROGATORY N0. 18:

With respect to the expert witnesses identified in your answer to these Interrogatories and requests for disclosure, list each document exchanged (given or received) between/among any of the experts, by giving the date, title and author of each document. If the document is untitled, give a brief description of its content sufficient to identify it.

ANSWER:


INTERROGATORY N0. 19:

With respect to each potential party to this lawsuit you have identified, state why you believe each of those persons is a potential party.

ANSWER:


INTERROGATORY N0. 20:

Pursuant to Rule 609(f), Texas Rules of Evidence, please state evidence of any conviction (by stating the offense, disposition, year of the offense, cause number, court, and county in which the offense occurred) which you intend to use at the trial of this matter regarding this Plaintiff or any witnesses identified as trial witnesses by this party.

ANSWER:


Respectfully submitted,

Charles Tabet
2600 McCullough Ave.
San Antonio, Texas 78212
(210) 572-7272 Telephone
(210) 572-7575 Facsimile

/s/ Charles Tabet
Attorney for Plaintiff
T. B. N0. 19601550

CAUSE NUMBER <u>2016CV03123</u>

| | | |
|---|---|---|
| HANNA SHALAKHTI | § | IN THE COUNTY COURT |
| VS. | | |
| | § | AT LAW N0. <u>CC# 03</u> |
| NATIONWIDE MUTUAL FIRE INSURANCE CO. AND ALARM SECURITY GROUP, LLC. D/B/A | | |
| ASG SECURITY | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

TO:     Alarm Security Group, one of the Defendants herein

Pursuant to Rules 166(b) and 167 of the Texas Rules of Civil Procedure, Hanna Shalakhti, Plaintiff, requests you:

1.      Produce and permit the requesting party, his agents, servants, or employees to inspect, sample, test, photograph, and/or copy, the following listed documents, recordings, and other data compilations from which information can be obtained or translated through appropriate devices into reasonably usable form, and to inspect, sample, test photograph, or copy any tangible things, hereinafter listed, which constitute or contain matters which are in your possession, custody or control; and

2.      To permit entry upon designated land or other property, hereinafter listed in your possession, custody or control for the purpose of inspecting and measuring, surveying, photographing, testing, or sampling of the property or any designated object or operation thereon.

For purposes of this Request, the following definitions are noted, to wit:

1.      "Document" means, without limitations, the originals, and all non-identical copies, whether printed or recorded, or produced by any mechanical process, or written or produced by hand of designated papers, books, accounts, writings, drawings, graphs, charts, photographs, any liability or indemnity insurance agreement, ledgers, correspondence, reports, statistics, sheets, and other recordings or data compilations from which information can be obtained.

2.      "Possession, Custody, or Control" shall include constructive possession whereby you have a right to compel the production of a mater, or to compel the entrance from a third party.

3.      "Expert" means a person with special knowledge, skills, and abilities who is expected to testify during the trial of this case, and an expert used for consultation and who is not expected to be called as a witness during trial, but whose work product forms a basis, either in part or in whole, of the opinions of an expert who is to be called during trial as a witness.

4.      "Report" means the mental impressions and opinions held by an expert and the facts known to the expert regardless of when the factual information was acquired which relates to or forms the basis of mental impressions and opinions held by the expert. A report includes documents and tangible reports, physical models, compilations of data,

and other material prepared by an expert or for an expert in anticipation of the expert's trial or deposition testimony, and further includes all tangible reports, physical models, compilation of data, and other material prepared by an expert used for consultation, regardless whether it was prepared in anticipation of litigation or trial, when such expert's report forms a basis, either in whole or in part, of the opinions of an expert who is to be called as a witness.

5.   "You and Your" mean each party to whom these questions are directed, as well as agents, employees, attorneys, investigators, and all other persons acting for that party.

6.   "Persons" shall mean natural persons, corporations, partnerships, and all other kinds of entities.

The time, place, and manner for making the inspection and performing the related acts are as follows:

|  |  |
|---|---|
| TIME: | Within thirty (30) days of your receipt hereof. |
| PLACE: | Law Office of Charles K. Tabet |
|  | 2600 McCullough Ave. |
|  | San Antonio, Texas 78212 |
| MANNER: | Personal Delivery |

If the above time, place and manner is inconvenient for you, please advise in writing when same might be accomplished.

The documents requested and/or lands or other property upon which entry is sought are as follows:

REQUEST FOR PRODUCTION N0. 1:

A copy of each document in your possession, custody or control you received from the Plaintiff from in 2014.

ANSWER:

REQUEST FOR PRODUCTION N0. 2:

A copy of each document in your possession, custody or control you sent to Plaintiff in 2014.

ANSWER:

REQUEST FOR PRODUCTION N0. 3:

A copy of each document in your possession, custody or control showing the number of false alarms Plaintiff received in his business from 2012 through the present.

ANSWER:

REQUEST FOR PRODUCTION N0. 4:

A copy of each document in your possession, custody or control showing the reasons the false alarms were generated since June 01, 2013.

ANSWER:

REQUEST FOR PRODUCTION N0. 5:

A copy of each document in your possession, custody or control showing the repair requests made to the location the subject of this suit since June 01, 2013.

ANSWER:

REQUEST FOR PRODUCTION N0. 6:

A copy of each document in your possession, custody or control showing repairs made to the location the subject of this suit since June 01, 2013.

ANSWER:

REQUEST FOR PRODUCTION N0. 7:

A copy of each document in your possession, custody or control showing the status of the alarm system (whether it was operational) on the premises from July 01, 2014, to July 15, 2014.

ANSWER:

REQUEST FOR PRODUCTION N0. 8:

If you denied that Exhibit "C" attached to the accompanying Request for Admissions is a true and correct copy of the activity report for that period reflected in that exhibit, provide a copy of each document in your possession, custody or control showing the activity report for that period.

ANSWER:

REQUEST FOR PRODUCTION N0. 9:

A copy of each document in your possession, custody or control showing the alarm status you received (whether it was tripped) on the dates reflected in Exhibit "C" attached to the accompanying Request for Admissions.

ANSWER:

REQUEST FOR PRODUCTION N0. 10:

A copy of each document in your possession, custody or control showing the actions you took and the persons/entities you called after the alarm was set on the date the burglary took place.

ANSWER:


REQUEST FOR PRODUCTION N0. 11:

A copy of your investigation in your possession, custody or control on the burglary, the status of the alarm, the zones of the alarm that were tripped and the persons contacted once the alarm was tripped.

ANSWER:


REQUEST FOR PRODUCTION N0. 12:

Each statement previously made by the requesting party, his agents, employees, or servants, concerning the subject matter of this lawsuit, which is in your possession, custody, or control. For purposes of this paragraph a statement previously made is:

    a.    A written statement signed or otherwise adopted or approved by the person making it, and/or

    b.    A stenographic, mechanical, electrical, or other type of recording, or any transcription thereof which is a substantial verbatim recital of a statement made by the person and contemporaneously recorded.

ANSWER:


REQUEST FOR PRODUCTION N0. 13:

A copy of each photograph, including video recorded pictures, depicting the manner this incident took place in your possession, custody or control.

ANSWER:


REQUEST FOR PRODUCTION N0. 14:

A copy of each photograph, including video recorded pictures, in your possession, custody or control you intend to use at the time of trial.

ANSWER:

REQUEST FOR PRODUCTION N0. 15:

A copy of each photograph, motion picture, videotape, map, drawing, chart, diagram, measurement, survey, model, or other documents in your possession, custody, or control depicting the scene of the burglary, or the area, persons, or object(s) involved, either made before, at the time of, or after the time of the burglary.

ANSWER:


REQUEST FOR PRODUCTION N0. 16:

A copy of all written reports or other written documentation in your possession, custody or control concerning all factual observations tests, supporting data, calculations, photographs and opinions of any expert whom you will or may call as a witness at the trial of this cause, including, but not limited to:

    a.    Any reports prepared by or under the direction of such expert witness, including any recording or transcripts thereof of any oral report;

    b.    A list of the names, addresses, and telephone numbers of all persons from whom the expert obtained information in his investigation of this claim;

    c.    A list of all publications in bibliographical form (including page numbers) which were read or referred to as part of his preparation and analysis in arriving at the opinions and conclusions reached; and

    d.    Copies of all reports, statements, summaries, illustrations, diagrams, drawings, and photographs made or referred to as part of his preparation and analysis or in support of any opinions and conclusions relating to this matter.

ANSWER:


REQUEST FOR PRODUCTION N0. 17:

As to each expert you have identified in your answers to Interrogatories, in the event such an expert has not recorded or reduced to a tangible form his factual observations, mental impressions, or opinions, tests, supporting data or calculations concerning this case, you are requested to have each expert you identified record or reduce to a tangible form his factual observations, mental impressions or opinions, tests, supporting data or calculations concerning this case, and produce a copy of each document to the requesting party.

ANSWER:


REQUEST FOR PRODUCTION N0. 18:

A copy of each document consisting of a police report or police investigation prepared in connection with this suit in your possession, custody or control.

ANSWER:

REQUEST FOR PRODUCTION N0. 19:

A copy of each document in your possession, custody or control showing the identity of each person you believe is a potential party to this lawsuit.

ANSWER:


REQUEST FOR PRODUCTION N0. 20:

A copy of each document in your possession, custody or control showing the reasons you believe each person is a potential party to this lawsuit.

ANSWER:


REQUEST FOR PRODUCTION N0. 21:

If not provided in response to other discovery a copy of each witness statement in your possession, custody or control.

ANSWER:


REQUEST FOR PRODUCTION N0. 22:

A copy of each tape and video recordings in your possession, custody or control of the actions you undertook at and after the you received notice of the alarm being tripped on the date of the burglary.

ANSWER:


REQUEST FOR PRODUCTION N0. 23:

If you denied that Exhibit "G" attached to the accompanying Request for Admissions is a true and correct copy of the agreement between you and the Plaintiff provide a copy of each agreement that was in effect at the time of the burglary in your possession, custody or control.

ANSWER:


Respectfully submitted,

Charles K. Tabet
2600 McCullough Ave.
San Antonio, Texas 78212

(210) 572-7272 Telephone

/s/ Charles Tabet
Attorney for Plaintiff
T. B. N0. 19601550

CAUSE NUMBER 2016CV03123

| | | |
|---|---|---|
| HANNA SHALAKHTI | § | IN THE COUNTY COURT |
| VS. | § | AT LAW N0. CC# 03 |
| NATIONWIDE MUTUAL FIRE INSURANCE CO. AND ALARM SECURITY GROUP, LLC. D/B/A ASG SECURITY | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

TO:    Nationwide Mutual Fire Insurance Co., one of the Defendants herein

Pursuant to Rules 166(b) and 167 of the Texas Rules of Civil Procedure, Rami Alseraihi, Plaintiff, requests you:

1. Produce and permit the requesting party, his agents, servants, or employees to inspect, sample, test, photograph, and/or copy, the following listed documents, recordings, and other data compilations from which information can be obtained or translated through appropriate devices into reasonably usable form, and to inspect, sample, test photograph, or copy any tangible things, hereinafter listed, which constitute or contain matters which are in your possession, custody or control; and

2. To permit entry upon designated land or other property, hereinafter listed in your possession, custody or control for the purpose of inspecting and measuring, surveying, photographing, testing, or sampling of the property or any designated object or operation thereon.

For purposes of this Request, the following definitions are noted, to wit:

1. "Document" means, without limitations, the originals, and all non-identical copies, whether printed or recorded, or produced by any mechanical process, or written or produced by hand of designated papers, books, accounts, writings, drawings, graphs, charts, photographs, any liability or indemnity insurance agreement, ledgers, correspondence, reports, statistics, sheets, and other recordings or data compilations from which information can be obtained.

2. "Possession, Custody, or Control" shall include constructive possession whereby you have a right to compel the production of a mater, or to compel the entrance from a third party.

3. "Expert" means a person with special knowledge, skills, and abilities who is expected to testify during the trial of this case, and an expert used for consultation and who is not expected to be called as a witness during trial, but whose work product forms a basis, either in part or in whole, of the opinions of an expert who is to be called during trial as a witness.

4. "Report" means the mental impressions and opinions held by an expert and the facts known to the expert regardless of when the factual information was acquired which relates to or forms the basis of mental impressions and opinions held by the expert. A report includes documents and tangible reports, physical models, compilations of data,

and other material prepared by an expert or for an expert in anticipation of the expert's trial or deposition testimony, and further includes all tangible reports, physical models, compilation of data, and other material prepared by an expert used for consultation, regardless whether it was prepared in anticipation of litigation or trial, when such expert's report forms a basis, either in whole or in part, of the opinions of an expert who is to be called as a witness.

5.      "You and Your" mean each party to whom these questions are directed, as well as agents, employees, attorneys, investigators, and all other persons acting for that party.

6.      "Persons" shall mean natural persons, corporations, partnerships, and all other kinds of entities.

The time, place, and manner for making the inspection and performing the related acts are as follows:

|  |  |
|---|---|
| TIME: | Within thirty (30) days of your receipt hereof. |
| PLACE: | Law Office of Charles K. Tabet |
|  | 2600 McCullough Ave. |
|  | San Antonio, Texas 78212 |
| MANNER: | Personal Delivery |

If the above time, place and manner is inconvenient for you, please advise in writing when same might be accomplished.

The documents requested and/or lands or other property upon which entry is sought are as follows:

REQUEST FOR PRODUCTION N0. 1:

A copy of each document in your possession, custody or control you received from the Plaintiff.

ANSWER:


REQUEST FOR PRODUCTION N0. 2:

A copy of each document in your possession, custody or control you sent to Plaintiff.

ANSWER:


REQUEST FOR PRODUCTION N0. 3:

A copy of each document in your possession, custody or control you requested from the Plaintiff.

ANSWER:


REQUEST FOR PRODUCTION N0. 4:

A copy of each policy you issued that was in effect that provided coverage for the loss Plaintiff sustained in this burglary.

ANSWER:


REQUEST FOR PRODUCTION N0. 5:

If not provided in response to other requests a copy of each document in your possession, custody or control showing the reasons you denied coverage on this claim.

ANSWER:


REQUEST FOR PRODUCTION N0. 6:

A copy of each document in your possession, custody or control showing the replacement value of the items Plaintiff lost in the burglary.

ANSWER:


REQUEST FOR PRODUCTION N0. 7:

A copy of each document in your possession, custody or control showing the status of the alarm system (whether it was operational) on the premises that were burglarized on the date of the burglary.

ANSWER:


REQUEST FOR PRODUCTION N0. 8:

A copy of each document in your possession, custody or control supporting your belief that the alarm was not set at the time the burglary took place.

ANSWER:


REQUEST FOR PRODUCTION N0. 9:

A copy of each document in your possession, custody or control disputing that Plaintiff lost of the items he lost in the burglary (this request includes the money he lost).

ANSWER:


REQUEST FOR PRODUCTION N0. 10:

If not provided in response to other requests, a copy of each document in your possession, custody or control disputing the replacement value of the items Plaintiff lost in the burglary.

ANSWER:


REQUEST FOR PRODUCTION N0. 11:

A copy of your investigation in your possession, custody or control on which you relied in support of your denial of this claim for coverage.

ANSWER:


REQUEST FOR PRODUCTION N0. 12:

Each statement previously made by the requesting party, his agents, employees, or servants, concerning the subject matter of this lawsuit, which is in your possession, custody, or control. For purposes of this paragraph a statement previously made is:

   a.   A written statement signed or otherwise adopted or approved by the person making it, and/or
   b.   A stenographic, mechanical, electrical, or other type of recording, or any transcription thereof which is a substantial verbatim recital of a statement made by the person and contemporaneously recorded.

ANSWER:


REQUEST FOR PRODUCTION N0. 13:

A copy of each photograph, including video recorded pictures, depicting the manner this incident took place in your possession, custody or control.

ANSWER:


REQUEST FOR PRODUCTION N0. 14:

A copy of each photograph, including video recorded pictures, in your possession, custody or control you intend to use at the time of trial.

ANSWER:


REQUEST FOR PRODUCTION N0. 15:

A copy of each photograph, motion picture, videotape, map, drawing, chart, diagram, measurement, survey, model, or other documents in your possession, custody, or control

depicting the scene of the collision, or the area, persons, or object(s) involved, either made before, at the time of, or after the time of the collision.

ANSWER:

## REQUEST FOR PRODUCTION N0. 16:

A copy of all written reports or other written documentation in your possession, custody or control concerning all factual observations tests, supporting data, calculations, photographs and opinions of any expert whom you will or may call as a witness at the trial of this cause, including, but not limited to:

- a. Any reports prepared by or under the direction of such expert witness, including any recording or transcripts thereof of any oral report;
- b. A list of the names, addresses, and telephone numbers of all persons from whom the expert obtained information in his investigation of this claim;
- c. A list of all publications in bibliographical form (including page numbers) which were read or referred to as part of his preparation and analysis in arriving at the opinions and conclusions reached; and
- d. Copies of all reports, statements, summaries, illustrations, diagrams, drawings, and photographs made or referred to as part of his preparation and analysis or in support of any opinions and conclusions relating to this matter.

ANSWER:

## REQUEST FOR PRODUCTION N0. 17:

As to each expert you have identified in your answers to Interrogatories, in the event such an expert has not recorded or reduced to a tangible form his factual observations, mental impressions, or opinions, tests, supporting data or calculations concerning this case, you are requested to have each expert you identified record or reduce to a tangible form his factual observations, mental impressions or opinions, tests, supporting data or calculations concerning this case, and produce a copy of each document to the requesting party.

ANSWER:

## REQUEST FOR PRODUCTION N0. 18:

A copy of each document consisting of a police report or police investigation prepared in connection with this suit in your possession, custody or control.

ANSWER:

## REQUEST FOR PRODUCTION N0. 19:

A copy of each document in your possession, custody or control showing the identity of each person you believe is a potential party to this lawsuit.

ANSWER:


REQUEST FOR PRODUCTION N0. 20:

A copy of each document in your possession, custody or control showing the reasons you believe each person is a potential party to this lawsuit.

ANSWER:


REQUEST FOR PRODUCTION N0. 21:

If not provided in response to other discovery a copy of each witness statement in your possession, custody or control.

ANSWER:


Respectfully submitted,

Charles K. Tabet
2600 McCullough Ave.
San Antonio, Texas 78212
(210) 572-7272 Telephone


/s/ Charles Tabet
Attorney for Plaintiff
T. B. N0. 19601550